CLERK OF THE CIRCUIT COURT FOR CALVERT
COUNTY *v.* CHESAPEAKE BEACH
PARK, INC.

[No. 162, September Term, 1968.]

*Decided December 6, 1968.*

*Motion for rehearing filed January 6, 1969; denied January ·6, 1969.*

The cause was argued before HAMMOND, C. J., and McWIL·LIAMS, FINAN, SINGLEY and SMITH, JJ.

*Thomas A. Garland* and *Donald Needle, Assistant Attorneys ·General,* with whom was *Francis B. Burch, Attorney General,* ·on the brief, for appellant.

*Ward B. Coe, Jr.,* with whom were *Anderson, Coe & King* ·and *Davis A. Harkness* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Slot machine entrepreneurs who desire to continue their business to the greatest possible extent brought an action in the Circuit Court for Calvert County for a declaratory judgment that it was not a violation of Ch. 617 of the Laws of 1963 (Code [1964 Supp.], Art. 27, § 264B), to possess and operate after July 1, 1968:

> "a. A mechanical amusement device (commonly known as a one-arm bandit) which requires the insertion of a coin or token for its operation and which offers an award to the operator based in whole or in part upon chance, the award being a metal token which may, at the option of the operator, be inserted in the device for replay or may be redeemed at petitioner's place of business for merchandise.
>
> b. An electrical amusement device (commonly known as a console device) which requires the insertion of a coin for its operation and which offers an award to the operator based in whole or in part on chance, said award being the registration upon the device of one or more free plays, which free plays may, in the option of the operator, be taken by playing the machine or may be redeemed at petitioner's place of business for merchandise.
>
> c. A partly mechanical and partly electrical amusement device (commonly known as a pinball machine) which requires the insertion of a coin for its operation and which offers an award to the operator based in whole or in part upon chance or his skill, said award being the registration upon the device of one or more free plays which may, in the option of the operator, be taken by replaying the machine or may be redeemed at petitioner's place of business for merchandise,"

and a further declaration that each of the three devices is legal under § 181 (a) of the Code of Public Local Laws of Calvert County (1963). They also sought mandamus to compel the Clerk of the Circuit Court to accept applications and issue li-

censes for these "amusement devices." The Circuit Court held that the one-arm bandit was a slot machine within the definition of Ch. 617 and, therefore, proscribed statewide and that neither the console nor the pinball machine was encompassed by the definition of a slot machine and each, therefore, could legally be licensed, possessed and operated in Calvert County. The Clerk appealed from the writ of mandamus directing him to license the console and the pinball machines. The slot machine entrepreneurs appealed from the court's denial of their right to a license for the one-arm bandit.

In 1962 Governor Tawes appointed a committee of seven, chaired by Richard W. Emory of the Baltimore Bar, to study and recommend procedures designed to do away with slot machines in Anne Arundel, Calvert, Charles and St. Mary's Counties "with the least possible damage to the economy of these Counties." The committee unanimously recommended complete abolition of slot machines, with four of its members adding individual recommendations aimed at softening the blow by a gradual phase-out and State inspired or provided financial replacements to the economy of the affected County, and phrased its recommendation to the Governor in January 1963 in part as follows:

"7. Procedures for Abolishing Slot Machines.

"Any abolition of slot machines requires repeal of the local laws applicable to Anne Arundel, Calvert, Charles and St. Mary's Counties legalizing cash pay-off machines. It also requires repeal or amendment of the General Laws permitting the licensing of 'free play' slot machines classified by the Federal government as gambling devices, and enactment of a State law at least as strong as the Federal Gambling Devices Act of 1962 prohibiting any machine, 'free play' or otherwise, which may be used as a gambling device. Unless the problem is attacked on a statewide basis, the 'free play' gambling devices will invade Southern Maryland and the slot machine business will continue there, but the four Counties will have been deprived of the approximate $1,600,000 in annual revenues which they now enjoy.

"Florida and New York have laws that prohibit the possession of any machine or device which, by reason of any element of chance or of other outcome of such operation unpredictable by the operator, the user may receive or become entitled to receive anything of value or otherwise or may secure additional chances or rights to use the machine. It will be noted that this is a very broad definition which prohibits the possession of even a 'free play' machine which the Federal government in the Gambling Devices Act of 1962 and in the revenue laws classifies as an amusement device.

"Whether Maryland adopts a law based upon Florida and New York law or upon Federal law, enactment must be followed by strict enforcement; otherwise nothing will have been accomplished but to deprive the four Southern Maryland Counties of the revenues which they receive."

On February 18, 1963, the Speaker introduced House Bill 475, which eventually became Ch. 617 of the Laws of 1963. Its title read that it was to add § 264B of Art. 27 of the Code, Crimes and Punishments, under the sub-title "Gaming," to define the term "slot machines," to make it unlawful to possess or operate such machines except for a specified period in the four Southern Maryland Counties during which these machines were to be gradually decreased year by year and "providing for the gradual and eventual total abolition by July 1, 1966, of all slot machines within this State." The bill provided that:

"Any machine, apparatus or device is a slot machine within the provisions of this section if it is one that is adapted for use in such a way that, as a result of the insertion or deposit therein, or placing with another person of any piece of money, coin, token or other object, such machine, apparatus or device is caused to operate or may be operated, and by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, coin, token or other object representative of and convertible into

money, irrespective of whether the said machine, apparatus or device may, apart from any element of chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise or money or other tangible thing of value."

On March 6 an amendment of the Committee on the Judiciary was adopted by the House, adding Sec. 2 to House Bill 475 to read as follows:

"And be it further enacted, That the intent of the Legislature in the enactment of the aforegoing Act is expressed as not intending to apply to the machine, apparatus or device commonly known or colloquially referred to, as 'Pinball Machine,' so long as said machine, apparatus or device does not permit any compensation, remuneration, recompense, reward, repayment or winnings beyond an automatic replay of a game or games mechanically provided upon said machine."

This was the only amendment to the bill as introduced except changes in dates making the total abolition date July 1, 1968, instead of July 1, 1966, with appropriate changes in phase-out dates. The bill, which passed the House on March 18 and the Senate on March 26, contained the customary provision that all laws or parts of laws, public, general or public local, inconsistent with the provisions of this Act are repealed to the extent of any such inconsistency.

The Circuit Court took the view that the one-arm bandit came within the definition of a slot machine because it is a machine:

"which delivers to the operator [in the cup into which the tokens would fall after a winning pull of the arm of the bandit] *as a function of the machine itself* either money, coins, tokens or any other tangible object which is representative of or convertible into money * * *." (Emphasis added)

The court then described the methods of operation of the console and pinball machines, saying that on each winners would become entitled to varying numbers of free plays:

"which register on the machine and may be used either to operate the machine again or may be taken off of the machine by someone representing the owner of the machine and a receipt for those plays given to the operator, which receipt may be convertible into further plays in the machine at another time or into a prize in the form of some tangible object, either merchandise or food or services offered by the establishment operating the machine,"

and held that console and pinball machines were permitted by the Calvert County law and not proscribed by Ch. 617 because:

"A slot machine within the definition of the phase-out law has to deliver some object to the operator which is convertible into money. These machines, as a function of the machines themselves, do not deliver anything to anybody."

We do not agree for a number of reasons. If statutory language is fairly susceptible of more than one reasonable construction the interpreting court may seek assistance from established rules of construction. In *Dept. of Tide. Fisheries v. Sollers,* 201 Md. 603, 611, Judge Delaplaine for the Court put it this way:

"It is important, however, to keep in mind that the meaning of the plainest language in a statute may be controlled by the context, and if the language is fairly susceptible of more than one construction, the Court may seek the legislative intention by considering the facts of contemporary history, the prior state of the law, and the particular evil, abuse or defect which the statute was designed to correct and the remedy which was intended. The statute should then be so construed that all of its parts harmonize with its general scheme to effectuate the legislative purpose."

More recently in *State Dep't v. Ellicott-Brandt,* 237 Md. 328, 335-336, we pointed out that:

"The object of judicial interpretation of legislative enactments is to find and give effect to the intention of

the legislative body as expressed in the act as a whole and, since the plainest words in a statute may be controlled by the context, that construction is to be reached which will, if possible, harmonize all parts of the statute, one with the other and make them all, as nearly as may be, consistent with the general scope and purposes of the legislation. *Associated Acceptance v. Bailey*, 226 Md. 550, 556. Within this framework courts also recognize that the general language of one part of a statute may be controlled by the more specific phraseology of another, *Rafferty v. Comptroller*, 228 Md. 153, 158, and that if words are of a doubtful or ambiguous meaning their signification may be enlarged or restricted to make them expressive of the intention of the Legislature, if that intention is clearly ascertainable. In such case, aid to the true meaning of the statute may be found in the history of the adoption of the law and the objects sought to be attained. *Pressman v. Barnes*, 209 Md. 544."

Similar holdings include *Scherr v. Braun*, 211 Md. 553, 561; *Tyrie v. Baltimore County*, 215 Md. 135; *Gray v. State*, 221 Md. 286; *Height v. State*, 225 Md. 251; *Md. Medical Service v. Carver*, 238 Md. 466; *St. Joseph Hospital v. Quinn*, 241 Md. 371; *Walker v. Montgomery County*, 244 Md. 98.

The application of these general rules of construction is sharpened by the nature of the statute under consideration. *Gaither v. Cate*, 156 Md. 254 (1929), held, in disagreement with various legislative and judicial holdings elsewhere to the contrary, that a machine adapted for gambling which ostensibly offered as a reward for playing it only additional free plays ·was a gambling device. In the course of so holding, our predecessors construed then § 257 of Art. 27 of the Code (now § 246, 1967 Repl. Vol.) reading: "The Courts shall construe the preceding sections relating to gambling and betting liberally, so as to prevent the mischiefs intended to be provided against," as applying not only to gambling statutes antedating that section but to those passed thereafter. The Court said:

"[W]e take it that section 257 is an expression by the Legislature of the policy of the State in respect to the

construction of gambling statutes generally, and requires the courts to construe statutes prohibiting and penalizing the use of gambling devices liberally, so as to prevent the mischiefs which the Legislature sought to repress. By that section it was, in effect, stated by the Legislature to the courts that, whenever the Legislature enacted statutes having for their object the repression of gambling, in respect to such statutes the rule of strict construction should be reversed, and the courts should so construe them as to give validity not only to the word, but to the spirit of the law. According to our view, it is incumbent upon the courts to give force and effect to the legislative mandate contained in this section of the Code, and to construe liberally statutes aimed and intended to prevent gambling, in order to effectuate the legislative intent and purpose; and therefore this statutory rule of construction should be applied to all gambling statutes without regard to whether they were enacted before or subsequent to section 257." [156 Md. at 258-259]

In this context we turn to a judicial dissection of Ch. 617 in order reasoningly to find the true legislative intent.

We start with the comments of the Emory report that (1) "any abolition of slot machines requires repeal of the local laws of Anne Arundel, Calvert, Charles and St. Mary's counties legalizing cash payoffs machines" and that (2):

"It also requires repeal or amendment of the General Laws permitting the licensing of 'free play' slot machines classified by the Federal government as gambling devices, and enactment of a State law at least as strong as the Federal Gambling Devices Act of 1962 [15 U.S.C., Commerce and Trade, § 1171 (1964); 26 U.S.C., Internal Revenue Code, § 4462(a) (Supp. III, 1965-67), *United States v. Korpan,* 354 U. S. 271, 1 L. Ed. 1337] prohibiting any machine, 'free play' or otherwise, which may be used as a gambling device.

\* \* \*

"Florida and New York have laws that prohibit the

possession of any machine or device which, by reason of any element of chance or of other outcome of such operation unpredictable by the operator, the user may receive or become entitled to receive anything of value or otherwise or may secure additional chances or rights to use the machine. It will be noted that this is a very broad definition which prohibits the possession of even a 'free play' machine which the Federal government in the Gambling Devices Act of 1962 and in the revenue laws classifies as an amusement device."
[See 15 U.S.C. § 1178 (1964)]

We add that we think the proper inference to be drawn from the inclusion of Section 2 in Ch. 617, legalizing *only* true free play pinball machines, is that the legislature believed the definition of a slot machine in Section 1 was broad enough to include, or to be construed as including, all machines or devices conferring upon a winning player any award, including true free play machines, as gambling devices under *Gaither v. Cate, supra.* Another fair inference is that because the only deviation the legislature selected from the general definition was the true free play pinball machine, it regarded and intended to classify as slot machines any console and pinball machines that furnished gratification or reward to a winning player other than further free plays. This legislative drawing of lines rejected the total ban of the New York and Florida statutes including even free play machines, and adopted the theory of the Federal statutes which classify as gambling devices pinball machines which can pay off in other than additional free plays but classify as permitted amusement devices free play pinball machines.

We do not share the view of the lower court (which was the view of Judge Northrop in *United States v. One Bally Bounty, etc. Pinball Machine* (D. Md.), 261 F. Supp. 187) that the defining words of Ch. 617, italicized below, that a machine is a slot machine if a winning player by chance "may receive *or become entitled to receive* any piece of money, coin, token or other object representative of and convertible into money" meant that if the machine is to be a slot machine the muniment of entitlement had to pass directly from the machine

to the player with no human participation in the passage other than that of the player.

Such a restricted reading of the statute would not gratify the requirements of § 246 of Art. 27 of the Code and the holding of *Gaither v. Cate; supra,* that the provisions of Art. 27 relating to gambling and betting be liberally construed by the courts "so as to prevent the mischiefs intended to be provided against."

In addition, the construction adopted below is not in our view accurately to be derived from the words of the statute which recognize that there may be participation in the gambling process and procedures by the owner of or attendant at the establishment housing the machine or device being played. Section 264B provides that a winning player may receive or become entitled to receive money or some equivalent as a result of the operation of the machine brought about by "the insertion or deposit therein, or *placing with another person* of any money, coin, token or other object," (emphasis added) and, in addition, does not limit or restrict the manner or way in which a winning player may "become entitled to receive" his award. The phraseology of the statute leads to the conclusion that evidence of the reward or the material reward itself may, without distinction and with the same consequences, come directly from the machine or from an attendant of the machine, and in every instance of material reward by chance the machine would be a slot machine. See *People v. Mills* (Magis.Ct. N.Y. City), 290 N.Y.S. 48, 160 Misc. 730.

We see a similar need to read the phrase "representative of *and* convertible into money" to mean representative of *or* convertible into money in the performance of our judicial duty to liberally construe gaming statutes to give effect to an ascertained legislative intent. 2 Sutherland, *Statutory Construction,* § 4923 (3rd Ed. 1943), says that:

> "There has been, however, so great laxity in the use of these terms ['and' and 'or'] that courts have generally said that the words are interchangeable, and that one may be substituted for the other, if to do so is consistent with the legislative intent."

50 Am. Jur. *Statutes* § 282 (1944) says that the generally loose use of "or" and "and" has infected statutes and

> "[f]or this reason, their strict meaning is more readily departed from than that of other words. In this respect it is clear that the courts have power to change and will change 'and' to 'or' and vice versa, whenever such conversion is required by the context, or is necessary to harmonize the provisions of a statute and give effect to all its provisions * * * or in general, to effectuate the obvious intention of the legislature."

We said in *Scherr v. Braun, supra,* 211 Md. 553, 561, that:
> "This Court has held that if necessary to carry out legislative intent, there may be ascribed to 'mere words' or 'particular words' not their literal or natural meaning but the meaning and effect that the 'whole surroundings, the purposes of the enactment, the ends to be accomplished, the consequences that may result from one meaning rather than another' may indicate they should have."

In *Slingluff v. Johns,* 87 Md. 273, 280, the Court read "or" as "and" and the word "their" as "my" as an imperative duty in order to give effect to the "true general intent" of the testator. In *Fid. & Dep. Co. v. Lumber Co.,* 176 Md. 217, 226, the Court construed the phrase in a building contractor's bond that the surety was liable to pay for "all materials furnished, installed, erected *and* incorporated in said structure * * *" to mean "erected *or* incorporated * * *," (emphasis added) saying: "in such cases the intention of the parties must control and to gratify this cardinal rule the conjunctive 'and' should be construed in the disjunctive as 'or' in order to give effect to this intent," citing *Sutherland on Statutory Construction.*

If the phrase defining the material reward of the winner is read as money, coin, token or other object "representative of or convertible into money," as we hold it should be, it is apparent that not only the tokens which fall to a winner in the cup of the one-arm bandit but the aggregate value of the free

plays won on the console or pinball machine, whether evidenced by a receipt or not, are alike "representative of" money in that under the evidence they can be used to purchase beverages, food or merchandise of a specified dollar value. Chapter 617 proscribes machines or devices through the operation of which this result can occur by chance.

It follows then that Ch. 617 repeals the Calvert County laws to the extent the latter would permit the licensing, possession and operation of gambling machines and devices that come within the ban of the statewide Act.

> *Order of the Circuit Court for Calvert County granting the writ of mandamus for the licensing of console and pinball machines reversed, and its order denying the writ for one-arm bandits affirmed, and case remanded for the making of a declaration in accordance with the opinion herein, all costs to be paid by the appellee.*