DISTRICT LAND CORPORATION *v.* WASHINGTON SUBURBAN SANITARY COMMISSION ET AL.

[No. 385, September Term, 1971.]

*Decided July 5, 1972.*

302

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Jerome E. Korpeck* and *Stanley J. Nadonley,* with whom were *Peter R. Hartogensis* and *Wheeler, Korpeck & Nadonley* on the brief, for appellant.

*Charles M. Byrd,* with whom were *John B. Kenkel* and *J. Lloyd Niles* on the brief, for Washington Suburban Sanitary Commission, part of appellees. *John B. Walsh, Jr., Assistant County Attorney,* with whom were *Richard S. McKernon, Acting County Attorney,* and *Stephen P. Johnson, Assistant County Attorney,* on the brief, for Montgomery County, Maryland, other appellee.

BARNES, J., delivered the opinion of the Court.

The question presented to us in this appeal is whether the Circuit Court for Prince George's County (Meloy, J.) erred in passing an order on February 3, 1972, dismissing a Petition for Writ of Mandamus filed by the appellant, District Land Corporation (District), a Maryland corporation, to direct the Washington Suburban Sanitary Commission (WSSC), one of the appellees, to provide sewer service to apartment buildings planned for construction by District.

The relevant facts in this case have been stipulated. In 1967, District purchased a 209.8 acre parcel of land known as the Anderson Tract. After the purchase of the property, District began to take the necessary steps to begin the construction of apartment buildings on the 69.6 acres of the subject property which had been rezoned on October 11, 1966, from the R-R zone to the R-20, multiple-family, medium-density residential zoning classification. Thus, District filed Preliminary Plans of Subdivision (#1-67182) with the Montgomery County Planning Board of the Maryland-National Capital Park and Plan-

ning Commission, which were approved on March 21, 1968, and established the zoning and park-taking lines. A preliminary Plan of Subdivision (#1-70004) for approximately 46.86 acres of the R-20 parcel was approved by the Maryland-National Capital Park and Planning Commission on July 16, 1970. Thereafter, District's request for water mains and sewer extensions was approved by WSSC on August 31, 1970, with the customary conditions attached thereto. Pursuant to the sewer authorization, District and the WSSC on May 19, 1971, entered into an Engineering Agreement and District paid to WSSC $3,750 in fees. District and WSSC entered into a Front-Foot Benefit Agreement on May 13, 1971, wherein, *inter alia*, WSSC agreed to extend and construct water and sewer lines to the 69.6 acre parcel and, at a later date, to permit connections to these water and sewer lines. The water lines and the sewer lines had been constructed by WSSC prior to the commencement of the suit.

It was further agreed by all parties to this action that District has complied with every condition attached to WSSC's authorization of August 31, 1971, that District has obtained, except for the permits sought in this case, all necessary and requisite governmental approvals and permits incident to the construction of the apartment units on the subject property, and, further, that District has complied with all applicable laws, rules, regulations and conditions imposed by the appropriate governmental agencies concerned with the development of the subject property.

The trunk sewer lines traversing the subject property were constructed by the WSSC in the years 1967-1968, pursuant to the Five-Year Sewerage Program (Fiscal 1967-1971), adopted September 29, 1966, and Capital Improvements Program adopted pursuant thereto.

On June 3, 1971, by Resolution No. 7-233, the County Council for Montgomery County adopted the Comprehensive Ten-Year Water and Sewerage Plan and approved the WSSC's Six-Year Capital Improvements

Program. Resolution No. 7-233 was transmitted to the State Department of Health, and that Resolution was not disapproved within the time prescribed by Code (1971 Repl. Vol.) Art. 43, § 387C (d) 1. Section III. J. of the Resolution contained a provision whereby sewer service to certain Montgomery County areas was to be provided by the Commission only where the development conformed to the duly adopted and approved Master Plan. The subject property lies within one of these areas, "Gaithersburg and Vicinity."

The Master Plan for Gaithersburg and vicinity had been approved and adopted on January 14, 1971, and recommended that the subject property should be developed in the R-R classification in which apartment units are not permitted.

On July 26, 1971, District applied to the Montgomery County Department of Inspection and Licenses for Building Permits, and paid to the County the amount of $3,986.00 as fees therefor. On August 3, 1971, that Department issued Building Permits to District authorizing the construction of 420 apartment units on the subject property.

Based upon Section III. J. of Resolution No. 7-233, the WSSC, by letter dated December 13, 1971, declined to issue the sewer and water connection permits to District, pending a determination by the Montgomery County Council which had before it a proposed amendment to the Ten-Year Water and Sewerage Plan and the Six-Year Capital Improvements Program, which, if enacted, would have resolved the legal controversy concerning the 420 apartment units. However, on January 25, 1972, the County Council rejected the proposed amendment.

District filed suit against the Commission for a Writ of Mandamus in the Circuit Court for Prince George's County on December 17, 1971, directing the issuance of necessary house connection permits for the 420 apartment units. Thereafter, Montgomery County, Maryland, one of the appellees, moved to intervene, and, with the consent of the other parties, was permitted to do so. A

hearing was held on February 3, 1972; and at the close of the case, the court denied the Writ of Mandamus and granted the motion of the defendants to dismiss.

A brief summary of the relevant statutory enactments in this area will be helpful in understanding the issue at hand.

At one time, the planning and construction of water and sewerage facilities in the Montgomery County portion of the Washington Suburban Sanitary District was not subject to a legislatively expressed staging or program requirement. By the Laws of 1955, Chapter 78, the Five-Year Water and Sewer Program was established, requiring the advance planning and programming of major extensions of sanitary sewer systems. This law was amended by the Laws of 1959, Chapter 779 to specify a program period (five years) with procedures for county government and Maryland-National Capital Park and Planning Commission roles in the adoption of such programs.

In accordance with the provisions of the "Five Year Program Law" as it stood in 1966 (Laws of 1966, Chapter 637), the Commission formulated projected extensions of its sewer facilities, including Project No. 53, the "Great Seneca Creek-Whetstone Run" trunk sewer. Construction of Project No. 53 was started and completed in the years 1967-68 and traversed District's property.

The scope of the Five-Year Water and Sewer Program was amended by the Laws of 1969, Chapter 700, which provided for a Six-Year Capital Improvements Program and added certain procedural requirements. A state-wide requirement for advance planning of water and sewer facilities was established by the Laws of 1966, Ch. 562, adding § 387C to Article 43 of the Code, providing for the establishment of a Ten-Year Water and Sewer Plan for each county to be submitted to the State Department of Health no later than January 1, 1970. In Prince George's and Montgomery Counties, the WSSC was designated as the agency responsible for preparing the plan for submission to the governing bodies of those

counties. The governing bodies were then responsible for reviewing the plans, causing appropriate modifications, approving the plans and submitting the plans to the State Department of Health.

As mentioned above, on June 3, 1971, the County Council for Montgomery County, by Resolution No. 7-233, adopted the comprehensive Ten-Year Water and Sewer Plan, and approved WSSC's Six-Year Capital Improvements Program.

It is District's position, *inter alia,* that the denial of sewer service by the WSSC, pursuant to Resolution No. 7-233, was not authorized by either the Laws of 1969, Chapter 700 (the Six-Year Capital Improvements Program) or by Code, Article 43, § 387C.

In our opinion, the decision in this appeal turns upon a question of statutory construction in order to ascertain the intention of the County Council in adopting Resolution No. 7-233, with particular reference to subsection J. We must determine *inter alia* whether the words, "service is to be provided only to developments which conform to the duly adopted and approved master plan," applicable to the area of Gaithersburg and vicinity, in which the subject property is located, were intended to apply to developments for which sewer lines would be constructed pursuant to the Six-Year Capital Improvements Program or whether they were intended to apply to developments for which water and sewer lines had already been constructed pursuant to a prior Five-Year Sewerage Program and Capital Improvements Program.

In determining the legislative intent, we examine the words used as the primary source for discovering that intent. *Maryland Medical Service, Inc. v. Carver,* 238 Md. 466, 478, 209 A. 2d 582, 588 (1965).

If the words are clear and unambiguous, generally speaking, the search for the legislative intent ends. If, however, the words are not clear and unambiguous, then the well-established rules of statutory construction apply. *Clerk of the Circuit Court for Calvert County v.*

*Chesapeake Beach Park, Inc.*, 251 Md. 657, 663-64, 248 A. 2d 479, 482-83 (1968).

In view of the language in subsection J. that the additional service restrictions are "under Six Year Program," it appears that it was intended to exclude developments for which sewer lines had been constructed under the prior Five-Year Sewerage Program. On the other hand, the word "developments" is not otherwise defined or limited in the body of subsection J. so that its meaning is left open to construction. Hence, we turn to the rules of statutory construction to determine the legislative intent.

We first consider the statutory authorization by the General Assembly of Maryland, Laws of 1969, Ch. 700, pursuant to which the Six-Year Capital Improvements Program was adopted. In this Act the purpose was stated to be: "to establish procedures for the preparation by the Washington Suburban Sanitary Commission of a six-year capital improvements program with respect to water and sewerage facilities, specifying the information and schedules to be included in the Commission's programs and the procedures for consideration thereof, and action thereon, by the governing bodies of the two counties in the Washington Suburban Sanitary District."

The Act in Section 1(a) requires WSSC to: "prepare and submit to the governing body of each county in the Sanitary District a six year *projected* program of capital improvements with respect to water and sanitary sewerage facilities, the same hereinafter being referred to as the Commission's capital improvements program." (Emphasis supplied.) It also provides that the Six-Year Capital Improvements Program include: "a statement of the objectives of the several projects or individual programs therein and their relationship to the *long-range development plans* of the respective county governing bodies, as the same shall have been designated to the Commission by the county governing body. The Commission's capital improvements program shall, for each project, show a *projected* construction schedule, an esti-

mate of cost, and a statement of funding sources, including contributions which may be required for the effectuation of a project." (Emphasis supplied.)

Section 1(b)(1) of the Act requires that the Six-Year Capital Improvements Program include:

"Major extensions, projects or programs of sanitary sewer and water facilities *which it contemplates may be required* in each of the *following* six fiscal years in the Sanitary District and in such other areas as the Commission may deem appropriate for inclusion within the Sanitary District within those periods. For the purposes of this section, such extensions, projects or programs of major extensions of sewer and water facilities shall include those sewer mains of fifteen inches or over, water mains of sixteen inches or over, sewage or water pumping stations, force mains, storage and other major facilities . . . ." (Emphasis supplied.)

Section 1(b)(2) of the Act requires that the Six-Year Capital Improvements Program include:

"Additions of new projects and the deletion, modification, or rescheduling of previously approved projects *with respect to which a construction contract has not been let, or will not be let during the current fiscal year;*" (Emphasis supplied.)

It is apparent that these provisions of the Act relate to prospective actions and in no way suggest that the delegated power is to be applied to projects already in place under prior capital improvements programs.

Section 1(c)(1), entitled "County governing body action," sets forth the manner in which the County Council shall act upon the Six-Year Capital Improvements Program submitted to it by WSSC, as follows:

"Each county governing body shall finally act upon, by way of approval, disapproval or modifi-

cation, as more particularly hereinafter set forth, the Commission six-year capital improvement program. Such approvals or modifications may include as a part thereof the designation of a water or sewer main as being of controlled or limited access for service to designated areas within that county. * * *"

This gives the County Council power to designate a *proposed* sewer main to be of "controlled or limited access for service to designated areas" within Montgomery County; but by the provisions of the Act, such a restrictive designation relates to a sewer project which is the subject of the Six-Year Capital Improvements Program sought to be modified.

Nor, in our opinion, do the provisions of Code (1971 Repl. Vol.) Art. 43, § 387C confer power upon the County Council to deny sewer service where the sewer has already been constructed.

§ 387C, subsections (b) 3 and 4 specify the contents of the County sewer plan, in relevant part, as follows:

"3. In accordance with applicable regulations adopted by the State Board of Health and Mental Hygiene pursuant to subsection (c) of this section, each county plan shall delineate those areas where—"

* * *

"(IV) Community sewerage systems must be provided;

(V) Individual sewerage systems may be installed and used during an interim period, pending availability of a programmed community sewerage system;

(VI) Individual sewerage systems may be installed and used for an indefinite period."

* * *

"4. In addition, every county plan shall—

(i) Provide for the orderly *expansion and extension* of . . . community sewerage systems

. . . in a manner consistent with the needs and plans of the area;"

\* \* \*

"(iv) Delineate with all practical precision those portions of the county which community . . . sewerage systems . . . may reasonably be expected to serve *within the succeeding ten-year period,* and any portions in which the provisions of such services *is not reasonably foreseeable,* taking into consideration all related aspects of planning, zoning, population estimates, engineering, and economics, and all State, regional, municipal and local plans;

(v) Establish procedures for delineating and acquiring, on a time schedule pursuant to subsection 4(iv) above, necessary rights-of-way or easements for community . . . sewerage . . . systems or acceptable facilities.

(vi) Set forth a time schedule and proposed methods of financing the construction and operation of each programmed community . . . sewerage . . . system . . . together with the estimated cost thereof."

\* \* \*

"(viii) Include provision for periodic amendment or revision of the county plan."
(Emphasis supplied.)

There is no provision in § 387C for denial of sewer service in regard to a sewer project already completed under a previously approved program or otherwise. All of the provisions of § 387C apply prospectively to events *in futuro,* and do not authorize the County Council to deny sewer service where the sewer has already been constructed under a previously approved sewer program.

In view of the provisions of the Act and of Art. 43, § 387C, if we were to construe the language of subsection J. to apply to a sewer main constructed by WSSC under a prior Capital Improvements Program, we would be re-

quired to hold that subsection J. was beyond the delegated power and was void for that reason. It is well established that where two constructions of statutory language are possible, the Courts will prefer the construction which will result in the legality and effectiveness of the statutory provision being construed, rather than to adopt a construction which would make such provision illegal and nugatory. *The Swarthmore Co. v. Kaestner,* 258 Md. 517, 525-27, 266 A. 2d 341, 345-46 (1970) ; *Groh v. County Commissioners of Washington County,* 245 Md. 441, 445-46, 226 A. 2d 264, 267 (1967). Hence, we construe subsection J. as not having been intended to apply to a sewer facility already constructed and in place prior to the passage of the Act, and prior to the effective date of Resolution No. 7-233 adopting the Six-Year Capital Improvements Program and the Ten-Year Water and Sewerage Plan.

When Resolution No. 7-233 is considered as a whole as it must be to reach the legislative intent—*see St. Joseph Hospital v. Quinn,* 241 Md. 371, 379, 216 A. 2d 732, 736 (1966)—the entire thrust of the resolution is prospective in character. In establishing sewer and water categories, Resolution No. 7-233 provides for Category I containing all areas of the County, except those designated as Category III, capable of being served either by direct connection to or by small lines extended from program-sized lines, which program-sized lines either exist or are committed to construction. Category I is subdivided into three sub-categories:

"A. *Existing*
"This sub-category consists of those properties traversed by or adjoining an existing, functioning community sewer or water line. *Since construction of such lines is continual, the area within this category is* constantly growing. * * *" (Emphasis supplied.)
"B. *Under Construction*
"This sub-category consists of those proper-

ties to be served by a community sewer or water line which are either under physical construction or which have been authorized by WSSC and all required conditions have been met. Authorization means instruction by the WSSC commissioners to the staff to construct the project. * * *"

"C. *To Be Constructed*

"This sub-category is a residual. It consists of all properties in Category I which are not classified in I-A or I-B preceding. * * *"

The Resolution then continues:

"Within all areas under Category I, development shall be governed by the following policies:

"1. *As a general rule, no new individual system will be permitted, and community systems must be provided.*

"2. Hardship exceptions allowing for individual systems may be granted by the County Health Department for parcels or building lots in existence as of October 1, 1970 and for estate-type subdivisions consisting of lots of two acres or larger. Individual systems approved under the hardship exception shall be on an interim basis pending the availability of the community systems. Such individual systems shall be discontinued and the property connected to the community system when and if the County Health Department determines that the hardship no longer exists. * * *"

(Emphasis supplied.)

The Resolution also provides as applicable to all categories, the following:

"The project scheduling and service delinea-

tions related to that scheduling as approved by the Council in the Ten Year Plan and Six Year Program represents a statement of desire or willingness on the part of the Council to have construction go forward in the fiscal year indicated. *The adopted schedule does not represent a commitment on the part of the Council to actually construct the project. Actual construction is at the discretion of WSSC, which may refuse to start a project if WSSC deems it financially infeasible when the scheduled year arrives.*

"*As a general policy applicable to all categories, individual systems* for which approval was given by the County Health Department prior to October 1, 1970 may continue in undisturbed operation until such time as they present a health hazard."
(Emphasis supplied.)

It is clear from these provisions that the operation of the Resolution is prospective and applies to future construction. Provision is made for the continuation of individual systems having had prior approval until they become a health hazard, even though the Resolution later provides that generally no *new* individual systems will be permitted and community systems must be provided. This further indicates that the Resolution was not intended to disturb existing approved facilities.

The agreed Statement of Facts and Plats indicate, as we have observed, that the County Council adopted a five-year plan for extension of sewer facilities on September 29, 1966, the rezoning of the subject property from R-R to R-20 took place on October 11, 1966, the trunk line sewers were constructed by WSSC through the subject property in 1967 and 1968 and the County Department of Inspection and License granted District building permits to construct 420 units on the subject property. Under the circumstances of this case, we are of

the opinion that WSSC had no legal right to decline, on December 13, 1971, to issue sewer and water connection permits to District and the lower court erred in declining to issue the Writ of Mandamus prayed for by District to require WSSC to issue those connection permits.

District has raised a number of other questions in regard to (1) the constitutionality of Section III. J. as a denial of due process and as a taking of private property for public use without the payment of just compensation if its provisions were construed to apply to sewers already constructed under prior sewer programs; (2) an attempted usurpation of the functions and powers of the State Board of Health and Mental Hygiene and (3) an attempted frustration of existing procedures in regard to the applicable zoning law. Our decision that the provisions of Section III. J. were not intended to apply to sewers already constructed under prior sewer programs makes it unnecessary for us to decide these questions and we do not decide them.

> *Order of February 3, 1972, reversed and the case is remanded to the Circuit Court for Prince George's County to issue the writ of mandamus as prayed for by the appellant, District Land Corporation; the costs to be paid by the appellees.*