## THOMAS BENNETT ALLEN v. STATE OF MARYLAND

[No. 828, September Term, 1972.]

*Decided July 16, 1973.*

The cause was argued before ORTH, C. J., and SCANLAN and DAVIDSON, JJ.

*Thomas A. Rymer* for appellant.

*Mary Elizabeth Kurz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Warren F. Sengstack, State's Attorney for Calvert County,* and *Naji Maloof, Assistant State's Attorney for Calvert County,* on the brief, for appellee.

SCANLAN, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Circuit Court for Calvert County which was entered by Judge Perry G. Bowen, Jr., following a non-jury trial in which the appellant, Thomas Bennett Allen, was found guilty of the illegal possession of two slot machines, *i.e.,* (1) an inoperable, console-type slot machine from which most of the inside mechanism had been removed, and (2) a reel apparatus from another slot machine. Judge Bowen sentenced the appellant to pay a fine of eight hundred dollars ($800.00).

## THE STATUTE INVOLVED AND
## THE QUESTION PRESENTED

Article 27, Section 264B II (B) of the Ann. Code of Md. (1971) makes it unlawful:

"... for any person, firm or corporation,

whether as owner, lessor, lessee, licensor, licensee, or otherwise, to possess, keep, maintain or operate, or have in or upon any place of business, building or premises for any purpose any slot machines whatsoever; provided, however, that the county commissioners or county executive of any county in which such machines are situated may, in their discretion, cause such machines to be registered in a manner appropriate to their office and to be sealed against use, stored, kept and possessed under the supervision and control of said county commissioners or county executive pending lawful disposal."

Article 27, Section 264B defines a "slot machine" as follows:

"Any machine, apparatus or device is a slot machine within the provisions of this section *if it is one that is adapted for use in such a way that,* as a result of the insertion or deposit therein, or placing with another person of any piece of money, coin, token or other object, *such machine, apparatus or device is caused to operate or may be operated,* and by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, coin, token or other object representative of and convertible into money, irrespective of whether the said machine, apparatus or device may, apart from any element of chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise or money or other tangible thing of value." (Emphasis added.)

The question presented on this appeal is whether the trial court erred in finding that the appellant had violated Article 27, Section 264B by his possession of (a) an inoperable slot machine, and (b) the reel mechanism from another slot machine. For the reasons stated below, we hold that the two

apparatuses of whose possession appellant was found guilty did not fall within the definition of "slot machine" as set out in Article 27, Section 264B in that they were not, at the time they were found in his possession, "adapted" for use as slot machines.

## THE FACTS

Corporal R. H. Hayman, of the Maryland State Police, testified that during his investigation of the theft of four slot machines from a bar in North Beach, Maryland, he recovered two slot machines, both in operable condition, from John Thornton Billhimer. Corporal Hayman also testified that he then obtained a copy of a trade journal in which two slot machines were advertised for sale. The telephone number of the seller was given in the advertisement. As a result, Corporal Hayman was able to ascertain that the telephone number listed belonged to the appellant. He then reviewed the records in the office of the County Commissioners for Calvert County and learned that the appellant had not registered any slot machines with the County Commissioners pursuant to the provisions of Article 27, Section 264B II (B).

The police then obtained a search warrant for the premises owned by the appellant. They executed the warrant and recovered the following items from the basement of appellant's residence: (1) an empty slot machine case; (2) a reel mechanism for a slot machine; and (3) a one-arm, console-type slot machine from which various parts necessary for it to operate had been removed.

The searching officers testified that they made no effort to operate the console-type slot machine and indicated that the empty slot machine case and the reel mechanism clearly were inoperable as slot machines at the time they were seized.

One of the officers who participated in the search, Deputy Sheriff John Peyton, stated that the seized apparatuses were found in the workshop area of appellant's basement. He saw pinball machines and other machines in the workshop at the time of the search.

The appellant identified himself as a coin machine operator, dealing in all types of coin operated machines, including coffee machines, gum machines, cigarette machines, jukebox machines, pinball machines, coin operated car wash machines, penny scales and almost "any type of coin operated machines." Appellant's business is not confined to the State of Maryland, but he operates in the District of Columbia and Virginia as well. He testified that he owned three hundred coin machines in various types "spread out all over Maryland, the District of Columbia and Virginia."

Concerning the devices or apparatuses seized by police officers on the basis of which the charges were brought against him, appellant testified that he had "cannibalized" those machines to use some of their parts in other coin operated machines. For example, he said the coils in a console-type slot machine "can be used on any pinball machine as long as it is the same voltage." Appellant further testified that the springs in a pinball machine and in some coin slot machines are basically the same and this also was true in the case of the coin mechanism. He pointed out that the coin rejector would fit any machine. Appellant conceded that the slot machine reel seized in the search would not be interchangeable with another kind of coin operated machine. He said the reel was a part left over from a machine which he had "cannibalized" for other parts and that it was the only part of that machine which remained.

John Thornton Billhimer testified that the two machines which he turned over to Corporal Hayman in October 1971 were not in working condition when he received them in August of that year. Billhimer testified that he did not receive these two machines from the appellant, but that there came a time when, during the course of a conversation between the two men, the appellant told Billhimer that the two machines were his. Billhimer testified that it took him considerable time to put the two machines in operating condition because he had to make some of the parts, including the main spring. He also had to repair the clock and the slides of the two machines without

which parts they could not operate. The appellant was not charged with possession of the machines which Billhimer had turned over to the authorities.

Judge Bowen found that the State had not proved beyond a reasonable doubt that the appellant had violated the statute by his possession of the empty slot machine cabinet. As stated, however, he did find him guilty of possessing two slot machines, *i.e.*, the inoperable, console-type slot machine and the reel mechanism from the slot machine which the appellant had dismantled. The rationale of the trial court's ruling is found in this statement in his memorandum opinion:

> "The law doesn't say anything about whether that machine has to be operatable [sic] or whether it has to be in working condition or capable of paying out or taking in. Any piece of it which is clearly *adaptable* for that type of operation and for no other . . . falls within the prescription of . . ." the statute. (Emphasis added.)

## THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A FINDING OF GUILTY

The appellant's unchallenged testimony showed that he was a coin machine operator who used parts taken from dismantled slot machines in other types of coin operated machines, such as pinball machines, jukeboxes, etc. The evidence established that the slot machine reel and the partially dismantled slot machine which the police officers seized were inoperable. No evidence was introduced by the State to indicate that the missing parts required to make both of these apparatuses operable were immediately available to the appellant or that either device could be readily assembled as an operable slot machine.

On these facts the State, nevertheless, argues that the two apparatuses possessed by the appellant and seized in the search of his workshop "were clearly *adaptable* to the operation" of a slot machine. As previously stated, the trial court also was of the view that the two devices in question

were "clearly *adaptable*" for use as slot machines. (Emphasis added.) Webster's International Dictionary (2d ed.) defines "adaptable" as that which "can be adapted or can easily adapt to." If the Maryland General Assembly had proscribed coin machines which were "adaptable" or "easily adapted" for use as slot machines, we might have to concede the merit of the State's argument and the correctness of the trial court's determination in this case. The Legislature, however, has not spoken in the terms used by the State and the trial judge in their interpretation of the statute, *i.e.*, "adaptable for use." The statute speaks more narrowly. Article 27, Section 264B outlaws a machine, apparatus or device if it is one that "is *adapted* for use" as a slot machine. Webster, *supra*, defines the transitive verb "adapt" in these terms: "To make suitable; to fit; to adjust . . . ." In Article 27, Section 264B, the General Assembly used the verb "adapt" in its present tense and passive voice, *i.e.*, "is adapted."

The statute thus covers only devices which *are* fit, or adjusted, for use as slot machines. The Legislature did not go so far as to outlaw expressly machines or devices which are *adaptable* for use as slot machines. It is our function to ascertain the meaning of the words which the Legislature used, not what it might have said. As the late Mr. Justice Frankfurter put it in a different context: "When the . . . [Legislature] has the will, it has no difficulty in expressing it." *Bell v. United States*, 349 U. S. 81, 83 (1955). If the General Assembly wanted the dragnet of the statutory definition of slot machine to sweep wider than we discern it to reach, it easily could have chosen words which would have achieved that purpose.

Moreover, the legislative history of the enactment of Article 27, Section 264B in the 1963 Session of the General Assembly permits the inference that the more restrictive language which the General Assembly used was not an accidental decision. The legislation which finally abolished slot machines in this State arose out of the findings and recommendations of the Emory Commission which Governor Tawes appointed in 1962. As the Court of Appeals

noted in *Clerk v. Chesapeake Beach Park*, 251 Md. 657, 248 A. 2d 479 (1968), the report of the Emory Commission, in recommending the gradual abolition of slot machines in Anne Arundel, Calvert, Charles and St. Mary's Counties, referred to laws abolishing slot machines in Florida and New York. Specifically, the Commission reported that:

"Florida and New York have laws that prohibit the possession of any machine or device which, by reason of any element of chance or of other outcome of such operation unpredictable by the operator, the user may receive or become entitled to receive anything of value or otherwise or may secure additional chances or rights to use the machine. It will be noted that this is a very broad definition which prohibits the possession of even a 'free play' machine which the Federal government in the Gambling Devices Act of 1962 and in the revenue laws classifies as an amusement device.

"Whether Maryland adopts a law based upon Florida and New York law or upon Federal law, enactment must be followed by strict enforcement; otherwise nothing will have been accomplished but to deprive the four Southern Maryland Counties of the revenues which they receive." *Id.* at 661.

The New York statute, to which the Emory Commission referred, defines slot machine as follows:

"Any machine, apparatus or device is a slot machine or device within the provisions of this section if it is one that is adapted, *or may readily be converted into one that is adapted,* for use in such a way that, as a result of the insertion of any piece of money or coin or other object such machine or device is caused to operate or may be operated, and by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance or thing of

value, * * * or the user may secure additional
chances or rights to use such machine, apparatus or
device * * *." (Emphasis added.)[1]

Prior to May 7, 1934, however, the New York statute did
not contain the phrase "or may readily be converted into one
that is adapted." Under the prior statute, the New York
Court of Appeals had held that in order to obtain a
conviction under the statute it must be shown that the
article or machine seized must be, in itself, a complete
gambling device regardless of whether it could be also
converted into a gambling device. *People v. Jennings*, 257 N.
Y. 196, 177 N. E. 419 (1931); *People v. Bitter, supra* at 178. In
1934, the New York Legislature made clear its intent to
outlaw as a gambling device any machine that could be
readily converted to such use. It amended the statute by
adding the phrase quoted above. *People v. Bitter, supra;
Seaboard New York Corp. v. Wallander*, 192 Misc. 227, 80
N.Y.S.2d 715, 719 (1948). Therefore, at the time the Emory
Commission called the Maryland General Assembly's
attention to the corresponding New York anti-slot machine
statute, the latter law contained provisions which prohibited
not only the possession of devices which were "adapted" for
use as slot machines but also expressly barred those
apparatuses which "may be readily converted into one that
is adapted" for such use. Our Legislature, however, did not
elect to use the broader language of the New York statute
when it authored and approved the bill which became
Article 27, Section 264B. Under the circumstances, it would
be an extension of our function for this Court to supply, by
interpretation, such a significant omission from the
language of the statute. "To supply omissions transcends the
judicial function." *Iselin v. United States*, 270 U. S. 245, 251
(1926).

If Section 264B were an ordinary penal statute, the
Court's disinclination to supply language which the
Legislature omitted would gain added strength. Traditional

---

1. N.Y. Penal Laws, § 982, as quoted in People v. Bitter, 32 N.Y.S.2d 176,
178 (Ct. Spec. Sess. 1942).

canons of construction maintain that a criminal statute must be strictly construed in favor of the defendant, *Gatewood v. State*, 244 Md. 609, 617, 224 A. 2d 677 (1966), and that courts should hesitate to punish violations which do not come within the plain language of the statute alleged to have been violated. *Groh v. County Commissioners of Washington County*, 245 Md. 441, 447, 226 A. 2d 264 (1967). However, the statute under construction in the instant case is a law against gambling and betting. In this area, the Legislature has reversed the usual presumption in favor of strict construction of criminal statutes. Article 27, Section 246 of the Ann. Code of Md. (1971 Repl. Vol.) provides that:

"The courts shall construe the preceding sections relating to gambling and betting liberally, so as to prevent the mischiefs intended to be provided against."

In *Gaither v. Cate*, 156 Md. 254, 259, 144 A. 239 (1929), the Court of Appeals ruled that the legislative admonition to construe the laws against gambling "liberally" was to be applied "to all gambling statutes . . . ." The most recent application by the Court of Appeals of the doctrine of liberal construction of gambling statutes was its decision in *Clerk v. Chesapeake Beach Park, supra.* There, the Court held that Article 27, Section 264B was broad enough to embrace within the definition of a slot machine any console or pinball machine (other than a truly free play pinball machine), including machines where the aggregate value of "free plays" won could be exchanged for, or used to purchase, beverages, food or merchandise of a specified dollar value. *Id.* at 669. Nevertheless, the result reached in the *Chesapeake Beach Park* case does not, in our judgment, require the conclusion that either a slot machine part or a substantially dismantled and inoperable slot machine falls within the statutory prescription. In *Chesapeake Beach Park*, the Court of Appeals was confronted with a situation where ostensibly free play pinball machines were being operated in such a manner as to evade the basic legislative purposes to prevent gambling through the use of slot

machines or pinball machines, since, by reason of the element of chance the person playing the free play machine might realize "some merchandise or money or other tangible thing of value," *i.e.,* "free plays" which could be used to purchase merchandise.[2] In the case at bar, on the other hand, the apparatuses seized from the appellant could not be operated, in their current state, as any type of a machine, whether a gambling device or otherwise, and, consequently, could not be used to evade the statute and the legislative policy behind it.

For analogies, we also can draw on cases in other jurisdictions where defendants have been charged with the possession of alleged firearms and in which they argued successfully that the particular objects in their possession were not firearms. For example, in *Jarvis v. Commonwealth,* 306 Ky. 190, 206 S.W.2d 831 (1947), a defendant was acquitted when a Kentucky court found that a pistol which was not equipped with a cylinder and, consequently, could not be loaded or fired, did not constitute a firearm within the meaning of the statute. Similar results were reached in two New York cases where pistols which were in a state of disrepair and unfit for use or firing, were held not to be firearms. *People v. Boitano,* 18 N.Y.S.2d 644 (Co. Ct. 1940); *People v. Simons,* 124 Misc. 28, 207 N.Y.S. 56, 59 (1924). Surely, a trigger by itself is not the equivalent of a pistol. Likewise, a slot machine reel alone is not a device which "is adapted" for use as a slot machine. And we believe the same conclusion is required in the case of a slot machine from which have been removed essential parts required to make it operable.

We acknowledge the statutory admonition that the laws against gambling must be liberally construed. However, there are limits to liberal construction. The dictates of common sense and elementary considerations of justice

2. This Court's decision in Scott v. State, 1 Md. App. 481, 495, 231 A. 2d 728 (1967) is also distinguishable from the instant case. Numerous witnesses described the machines involved in that case as "slot machines," and there was no evidence to indicate that they were inoperable. As a result, this Court found that the inference was plain "that they were operational or could be made to operate." *Id.* at 495.

mark its outer boundaries. Thus, in a case like this one, where the Legislature has failed to make its intention manifest, "courts should proceed cautiously, remaining sensitive to the interest of defendant and society alike." *Gore v. United States*, 357 U. S. 386, 394 (1958). Under both the State's theory of what the statute means and the similar rationale adopted by the court below, one person could have in his possession a slot machine reel and another person possess a slot machine casing, both parts having been removed from the same dismantled slot machine and yet both could be convicted of the unlawful possession of a slot machine, since both devices could be "adapted" for use as a slot machine. If the General Assembly of Maryland intended to go that far, in our opinion it did not select language appropriate to achieve that result. Its failure to do so seems pertinent to us in the light of the fact that the Emory Commission had alerted the Legislature to the New York statute the language of which does suffice to embrace a non-operable but readily adaptable slot machine.

In concluding that the outer limits of liberal construction have been exceeded and that the conviction of the appellant therefore must be reversed, we confine ourselves strictly to the facts of this case. We are not dealing with a situation where partially dismantled slot machines have been found on the premises of a bar, club or restaurant, and where there was evidence that the parts required to make such machines operable were readily available and the machines thus easily adapted for use as gambling devices. *See, e. g., Seaboard New York Corp. v. Wallander, supra* at 719-720, where an expert witness for the prosecution demonstrated in court the speed and ease with which pinball machines could be converted into "free play" pinball machines made illegal under the New York statute. In the case at bar, there is no evidence that the two apparatuses which were seized from the appellant's workshop could be readily reconstructed for use as an operating slot machine. Moreover, the appellant was in the business of operating coin vending machines of all types and his testimony that a number of slot machine parts are interchangeable for use in other coin vending machines

was not rebutted. Accordingly, we hold that the evidence in this case was not sufficient to have permitted the trial court to conclude that either of the two apparatuses seized from the appellant was a device which "is adapted" for use as a slot machine within the coverage of Article 27, Section 264B.

If the Legislature should be of the view that its original purpose in enacting Section 264B was to afford the statute a broader sweep than we allow it in this case, the remedy is simple. It can amend the statute, as New York amended its law, to outlaw not only devices which are "adapted" for use as slot machines, but to prohibit those which are readily "adaptable" for such use. It would not be proper for us, however, to extend the more limited legislative purpose which we draw from Section 264B in the absence of statutory language permitting such judicial embellishment. An appellate court's function is one of interpretation; "it does not include the power of amendment under the guise of interpretation." *West Coast Hotel Co. v. Parrish*, 300 U. S. 379, 404 (1937). It may be that the police power of the State to suppress gambling is practically unrestrained. *Farr, et al. v. O'Keefe*, 27 F. Supp. 216 (S.D. Miss. 1939); *see also Mills v. Agnew*, 286 F. Supp. 107, 109 (D. Md. 1968). Nevertheless, if the Legislature means to exercise that power to its fullest dimensions it should use language which makes that intention manifest. This the General Assembly did not do in the drafting and enactment of Section 264B.

> *Judgment reversed; costs to be paid by the County Commissioners for Calvert County, Maryland.*