VICTOR JOHN WRIGHT *v.* STATE OF MARYLAND

[No. 356, September Term, 1974.]

*Decided January 14, 1975.*

The cause was submitted on briefs to MORTON, THOMPSON and POWERS, JJ.

Submitted by *Robert W. Baker, Assigned Public Defender,* for appellant.

Submitted by *Francis B. Burch, Attorney General, David B. Allen, Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *William Guiffre, Assistant State's Attorney for Baltimore City,* for appellee.

THOMPSON, J., delivered the opinion of the Court.

Victor John Wright, appellant, was convicted for murder in the first degree and the unlawful use of a handgun by the Criminal Court of Baltimore, Judge Solomon Liss presiding with a jury. He received a life sentence for the murder and a five year consecutive sentence for the handgun violation.

## FACTS

Stephen Christian testified that on June 9, 1973, at approximately 1 a.m., he and the victim, Gerald Miller, were sitting together behind an apartment complex in Baltimore City. The appellant approached the witness and asked him what relation the victim was to him. Upon being informed that Miller's brother was his brother-in-law, the appellant

said he was going to kill Miller and the witness should remain seated and not run or else he would "get" him. The appellant drew a handgun from his belt, walked behind the victim and shot him in the back of the head from a distance of 10 to 15 feet. The victim was seated with his head in his hands, apparently under the influence of narcotics. The appellant thereupon fled the scene. Christian then went to his mother's apartment, called the operator and reported the shooting without giving his name. Christian identified the appellant, whom he had known for 6 years, as Miller's murderer.

Miss Julia Taylor, the appellant's girlfriend, testified that the appellant was with her at the time the murder was committed. The appellant did not testify.

## I Sufficiency of the Evidence

The appellant contends that the evidence was insufficient to support his convictions because the testimony of Stephen Christian, the eyewitness, was "so fraught with inconsistencies regarding the critical issue of this case that it should be entirely disregarded." Once again an appellant has attempted to come within the confines of what has become known as the *Kucharczyk* doctrine. *Kucharczyk v. State*, 235 Md. 334, 201 A. 2d 683 (1964). *See Bailey v. State*, 16 Md. App. 83, 294 A. 2d 123 (1972). Once again we hold that *Kucharczyk* is inapposite.

The appellant bases his contention on what he asserts are four inconsistencies in Christian's testimony:

(1) On direct examination Christian testified that after the appellant told him he was going to kill the victim, "He (appellant) told me I had better sit down, I better not run or he will get me." This was said just prior to the murder. On redirect Christian testified that the appellant also said that if he (Christian) said anything he would kill him. We find no material discrepancy in this testimony.

(2) On direct examination Christian was asked if he had said anything to the appellant after being informed that the appellant intended to kill the victim. Christian answered,

"Not that I can remember, I was shocked. I didn't really believe him." On cross-examination Christian testified that he said, "Think about it, something like that. 'Don't do that,' I can't remember what it was. It was so long ago." This discrepancy clearly dealt only with minor or peripheral details and not with the core issues of the very occurrence of the *corpus delecti* or of the criminal agency of the appellant. As such *Kucharczyk v. State, supra,* does not apply. *Bailey v. State, supra* at 96.

(3) On direct examination, Christian said that after the shooting he ran up to his mother's apartment and called the police to inform them of the shooting. On cross-examination, it was disclosed that he did not in fact talk with the police but that he gave the information to the operator. Here again the discrepancy goes to a very minor point and *Kucharczyk* does not apply. *Bailey v. State, supra* at 96.

(4) Several days after the murder Christian told the police that he had been at a store at the time of the murder and that when he returned to the scene Miller was already dead. He added that he had not come forward earlier with correct information because he was threatened. At appellant's trial, however, Christian testified that he did not inform the police of what he knew because his mother would not allow him out. *Kucharczyk* does not apply because a witness's trial testimony is contradicted by other statements which the witness has given out of court. *Bailey v. State, supra* at 95.

## II Juror Misconduct

The appellant also contends that the trial judge erred in denying his motion for a new trial. That motion was based on an allegation that the foreman of the jury fell asleep during the court's advisory instructions at the close of the case. There is no record of this occurrence in the transcript of appellant's trial. The trial judge during the course of the hearing on appellant's new trial motion clarified the situation:

"The Court: Let the record show that for a moment the foreman of the jury dozed and I

awakened him immediately and there was no question whatsoever concerning his attention before or after."

The disposition of a new trial motion is within the sound discretion of the trial judge and will not be disturbed on appeal unless a clear abuse of that discretion is shown. *White v. State,* 17 Md. App. 58, 67, 299 A. 2d 873 (1973). We find no abuse in the instant case.

In *Hall v. State,* 223 Md. 158, 162 A. 2d 751 (1960), the Court of Appeals dealt directly with the problem of a sleeping juror. The Court held that if a defendant alleges that a juror, or jurors, were guilty of misconduct, he is required to prove that the misconduct actually occurred and that he was prejudiced thereby. *See also Holt v. State,* 3 Md. App. 544, 547, 240 A. 2d 355 (1968). In affirming Hall's conviction the Court, discussing his failure to show prejudice, stated at page 178:

> "In addition, '[t]he length of time the juror was asleep is not shown, nor does it appear what testimony was introduced during that time, nor that it was of any importance or extent, nor whether favorable or unfavorable to the accused. There is no showing that the defendant was in any way prejudiced.' *Braunie v. State, supra,* 105 Neb. at 358."

In the instant case, while there is evidence that the foreman of the jury fell asleep, the trial judge stated that he "dozed for a moment", the appellant has in no way shown how he was prejudiced by the foreman's momentary inattention. We hasten to add that the problem could easily have been rectified if the appellant had objected at the time the foreman fell asleep and had asked the court to repeat the portion of the instructions, if any, the foreman had missed.

### III Verdicts

In the case at bar, when the jury returned with its verdict, the following took place:

314

"The Clerk: Members of the jury, have you reached a verdict?

The Jury: Yes, we have.

The Clerk: Who shall say for you? Stand up, Mr. Wright. Members of the jury, how say you, is Victor J. Wright guilty of the matter wherein he stands indicted or not guilty?

The Foreman: Guilty.

The Court: Now, as to the first count, what is your finding?

The Foreman: First degree.

Mr. Cohen: I'm sorry, I didn't hear.

The Foreman: Guilty of murder in the first degree.

The Court: As to the fourth count, what is your finding?

The Foreman: We didn't render a decision on that. We never even considered it.

The Court: I had indicated you would consider the first and fourth counts of the indictment, so I will ask you to go back and talk about that count. That is the count of the indictment which charges the Defendant with having used a handgun in the commission of a crime. Let me have the indictment. If you remember, members of the jury, I called your attention to the fact that you were to consider the first and fourth counts. The fourth count charges the Defendant with unlawfully using the handgun in the commission of a crime of violence. I'll ask you please to retire to consider that particular count."

Appellant objected to the jury being sent back to deliberate and moved for mistrial. The motion was denied. At the appellant's request, the jury was polled as to the first count. The jury was then harkened to the verdict and sent back to deliberate as to the fourth count. They subsequently returned a verdict of guilty as to that count.

Appellant contends that the action of the trial judge in

sending the jury back to deliberate on the fourth count was error.

A verdict, finding an accused guilty under one count of a multi-count indictment and being silent as to the remaining count or counts is a valid verdict and is equivalent to a verdict of not guilty as to the remaining counts. *Glickman v. State,* 190 Md. 516, 523, 60 A. 2d 216 (1948); *Hechter v. State,* 94 Md. 429, 50 A. 1041, 56 L.R.A. 457 (1902); *Gaskins v. State,* 10 Md. App. 666, 671, 272 A. 2d 413 (1971), *cert. denied,* 404 U. S. 1040; *Gibson v. State,* 8 Md. App. 1, 4, 256 A. 2d 890 (1969); *Agresti v. State,* 2 Md. App. 278, 280 n. 1, 234 A. 2d 284 (1967). This rule, however, does not apply to the instant case because the trial judge immediately upon learning that the jury had failed to consider the fourth count of the indictment in their original deliberations directed them to return to the jury room and deliberate upon that count. This action was proper under the rule laid down in *Heinze v. State,* 184 Md. 613, 42 A. 2d 128 (1945):

> "Where a verdict is ambiguous, inconsistent, unresponsive, or otherwise defective, it is the duty of the trial judge to call the jury's attention to the defect and to direct them to put the verdict in proper form either in the presence of the court or by returning to their consultation room for the purpose of further deliberation." *Id.* at 617.

The rule was approved and enlarged in *Glickman v. State, supra,* where the Court of Appeals stated:

> "Certainly then, when the jury have arrived at no verdict and so state, it is equally the duty of the trial judge to require them to retire, deliberate upon the case, and arrive at a verdict if possible." *Supra* at 525.

### IV  Allocution

The appellant finally contends that he was denied his right to allocution prior to sentencing.

A defendant's right to allocution is given by Md. Rule 761 a:

> "Sentence shall be imposed without unreasonable delay. Before imposing sentence the court shall afford an accused or his counsel an opportunity to make a statement and to present information in mitigation of punishment."

The dictates of Rule 761 a have been held to be mandatory. *Brown v. State,* 11 Md. App. 27, 31-32, 272 A. 2d 659 (1971). If allocution has been denied a defendant, the remedy in the appellate court is to vacate the sentence and remand the case for resentencing with the proper formalities, *i.e.* with allocution. *Brown v. State, supra* at 34.

In the instant case the right of allocution was denied. The State argues, however, that the error was harmless because the sentence imposed for the murder conviction (life imprisonment) was mandatory and because the sentence imposed for the handgun violation (5 years consecutive) was the statutory minimum.

In *Bartholomey v. State,* 267 Md. 175, 297 A. 2d 696 (1972), the Court of Appeals, as a result of the Supreme Court's decision in *Furman v. Georgia,* 408 U. S. 238, 92 S. Ct. 2726, 33 L.Ed.2d 346 (1972) declaring the death penalty unconstitutional in certain situations, remanded Bartholomey's murder conviction for resentencing. The Court directed the lower court to impose a life sentence and specifically declared that:

> "At the resentencing hearing, Bartholomey has the right to be present and represented by counsel, *additionally, he should be afforded his right of allocution under Rule 761 a.*" (Emphasis added). *Bartholomey v. State, supra* at 186.

Thus in spite of the apparent mandatory nature of the sentence to be imposed on Bartholomey, the appellant was

entitled to allocution. The same rationale applies to the instant case.[1]

Relative to the handgun sentence, the State argues that the statute defining the crime, Md. Code, Art. 27, § 36B (d), makes a 5 year consecutive term the minimum that can be imposed. Art. 27, § 36B (d) provides:

> "Any person who shall use a handgun in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a separate misdemeanor and on conviction thereof shall, in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor, be sentenced to the Maryland Division of Correction for a term of not less than five nor more than fifteen years, and it is mandatory upon the court to impose no less than the minimum sentence of five years."

It has recently been held that a sentencing judge has no power to impose less than a 5 year sentence or to suspend a sentence for a conviction under Art. 27, § 36B (d). *State ex rel. Sonner v. Shearin,* 272 Md. 502, 325 A. 2d 573 (1974). That case does not provide guidance, however, as to the question of whether the mandatory 5 year sentence must be consecutive to any other sentence which is imposed. For that we must look to the words of the statute. The statute, after generally defining the crime, designates it as a "separate misdemeanor." It then provides that the sentence, which may range from 5 to 15 years, shall be "in addition to any other sentences" which may be imposed. The dominant purpose of this language and of all of Section 36B is to stop the alarming rise in the use of handguns in the commission of crimes of violence. Md. Code, Art. 27, § 36 (a). There is, however, a world of difference between creating a new substantive offense and providing that the penalty for such an offense in all cases be consecutive. The legislature, if it

---

1. Cases are now pending which involve the question of probation, where a life sentence is the required punishment. We express no opinion on the question.

318

had wanted to accomplish the latter, would have used express language to do so. In the absence of such express language, we think the sentence imposed for violations of Art. 27, § 36B (d) may be either concurrent or consecutive as the sentencing judge in his discretion sees fit.[2] This conclusion does not defeat the legislature's purpose. A concurrent sentence for the handgun violation is certainly "in addition to" any other sentence which may also be imposed and presents serious consequences to the person sentenced.

Our conclusion is also supported by the two well established rules of statutory interpretation. The first of these is that a statute will be strictly construed where it is in derogation of the common law. *MacBride v. Gulbro*, 247 Md. 727, 729, 234 A. 2d 586 (1967); *Roberts v. Warden*, 242 Md. 459, 460, 219 A. 2d 254 (1966), *cert. denied*, 385 U. S. 876; *City of Baltimore v. Baltimore Gas & Electric Co.*, 232 Md. 123, 135, 192 A. 2d 87 (1963); *State v. Gibson*, 4 Md. App. 236, 247, 242 A. 2d 575 (1968), *aff'd.* 254 Md. 399; 3 *Sutherland Statutory Construction* § 61.01 (4th ed. 1973). The Court of Appeals in *Gleaton v. State*, 235 Md. 271, 277, 201 A. 2d 353 (1964) stated the rule thusly:

> "Statutes in derogation of the common law are strictly construed, and it is not to be presumed that the legislature . . . intended to make any alteration in the common law other than what has been specified and plainly pronounced."

While the legislature has the inherent power to specify the penalties to be imposed by a court for the commission of a given crime, *State ex rel. Sonner v. Shearin, supra* at 513, the court has the common law power to impose the sentence it sees fit so long as it comports with the statutory and constitutional mandates. *Gleaton v. State, supra* at 277;

---

2. We note that there have been numerous cases in which the sentence imposed for a violation of § 36B (d) was in fact concurrent. *See e.g.* State *ex rel.* Sonner v. Shearin, *supra;* Bremer v. State, 18 Md. App. 291, 307 A. 2d 503 (1973), *cert. denied*, 415 U. S. 930.

*Reynolds v. Warden,* 229 Md. 623, 625, 182 A. 2d 875 (1962); *Reid v. State,* 200 Md. 89, 92, 88 A. 2d 478 (1952); *Washington & Walker v. State,* 2 Md. App. 633, 634, 236 A. 2d 32 (1967). This judicial power also extends with the same limitations to the determination of whether a sentence will be consecutive or concurrent. *Martin v. State,* 227 Md. 407, 410, 177 A. 2d 247 (1962); *Long v. State,* 7 Md. App. 256, 263, 254 A. 2d 707 (1969).

In the case at bar, the argument advanced by the State is in essence that by Article 27, § 36B (d) the legislature stripped the judiciary of its discretion to impose a concurrent sentence and thus changed the common law in that regard. While the legislature clearly has the power to do so, a legislative change in the common law should never be presumed except where the change is specifically and plainly pronounced by the legislature. *Gleaton v. State, supra.* In this case such a specific and plain pronouncement is not contained in Art. 27, § 36B (d).

The second rule of statutory construction which supports our conclusion that Section 36B (d) does not mandate consecutive sentences is stated in 3 *Sutherland Statutory Construction* § 59.03 at 6-7.

> "It is an ancient rule of statutory construction and an oft-repeated one that penal statutes should be strictly construed against the government or parties seeking to exact statutory penalties and in favor of persons on whom such penalties are sought to be imposed. When the law imposes a punishment which acts upon the offender alone, and it is not a reparation to the party injured, and the punishment is entirely within the discretion of the law giver, it will not be presumed that the legislature intended the punishment to extend farther than is expressly stated.
>
> * * *
>
> "And as a corollary of the rule, in case of doubt concerning the severity of the penalty prescribed by

a statute construction will favor a milder penalty over a harsher one."

This rule has been followed in Maryland. *Gatewood v. State,* 244 Md. 609, 617, 224 A. 2d 677 (1966); *Grimm v. State,* 212 Md. 243, 246, 129 A. 2d 128 (1957); *Fowel v. State,* 206 Md. 101, 107, 110 A. 2d 524 (1955); *Wanzer v. State,* 202 Md. 601, 611, 97 A. 2d 914 (1953); *Allen v. State,* 18 Md. App. 459, 468, 307 A. 2d 493 (1973).

While the rule is most often applied to situations in which the question is what is or is not criminal conduct under a statute, we think the purpose and rationale for the rule apply with equal force to the question presented here. Where, as here, the statute does not make clear on its face the type of sentence which can be imposed, it should be construed so as to allow either consecutive or concurrent sentences.

We therefore vacate the appellant's sentences and remand the case to the lower court for resentencing with directions that at the resentencing hearing he be present, have the assistance of counsel and be given his right to allocution.

> *Sentences vacated; case remanded for resentencing; judgments otherwise affirmed.*