**Daniel Dewayne MONCIER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–84–01189–CR.**

Court of Appeals of Texas,
Dallas, Texas.

Jan. 14, 1986.

Richard Weaver, McKinney, for appellant.

H. Ownby, Crim. Dist. Atty., Roger V. Dickey, Asst. Dist. Atty., McKinney, for appellee.

STEPHENS, Justice.

Daniel Dewayne Moncier appeals his conviction of burglary of a habitation. In three grounds of error he contends: (1) the only witness connecting him to the offense was an accomplice witness as a matter of law, and that her uncorroborated testimony was inadmissible, (2) the submission to the jury during the punishment stage of the trial, over his timely objection, of whether a deadly weapon was used or exhibited during the commission of the offense violated due process because the indictment contained no allegation of a deadly weapon, and, (3) that there was no evidence to support the submission of the question of the use of a deadly weapon. We disagree with each contention, and accordingly, we affirm his conviction.

At about 3:00 a.m. on the morning of March 21, 1984, appellant, accompanied by co-defendant Timothy Kitchens, and Dianna Mitchell, awakened the occupant of a trailer house situated in a trailer park in Frisco, Texas, by beating on the door and demanding admittance. The occupant called the police. The occupant testified that the person outside began tearing the door off the hinges, trying to get into her trailer. As the person broke into the trailer, the occupant fled through a rear door. When the police arrived, they searched the premises and adjoining area. Co-defendant Kitchens was apprehended walking down a creek bank in an area close to the location of the alleged burglary. Dianna Mitchell was found in the van parked near the trailer house hiding under some covers. Appellant was arrested in a trailer house where he had asked permission to use the telephone.

The crucial question is whether Dianna Mitchell was an accomplice witness as a matter of law. Her uncorroborated testimony is the only evidence connecting appellant to the commission of the crime. Consequently, if, as a matter of law, she is an accomplice witness, her uncorroborated testimony will not support the conviction, and appellant must be acquitted.

## TESTIMONY OF DIANNA MITCHELL

Dianna Mitchell was 19 years of age at the time of trial. At the time of the alleged offense she was living with her mother and stepfather in an apartment in McKinney, Texas. She testified that around midnight on March 21, 1984, Moncier and Kitchens drove to her apartment in a van. She went outside and Moncier asked her if she wanted to make $500. She asked how, and was told that all she had to do was to go up to a door, knock on it, turn around, and get back in the van. She was given no more details. Needing the money, she decided to go along with Kitchens and Moncier. She went back into the apartment, got her shoes, came back out, got into the van and the three drove away.

They drove around for a while, then went to Moncier's apartment where he went inside for about fifteen minutes. When he came out they drove around a while longer, then went to Kitchen's house. Both Moncier and Kitchens got out and went into Kitchen's house and then into the garage. They brought out a white bag and put it into the van. Mitchell could not see what was in the bag. Moncier, at this time, had on an army green belt with little pouches in it. He put a small stuffed toy into one of the pouches, saying that it would make it

look like it contained a grenade. Mitchell saw some little blue shotgun shells come out of the pouch. They then went to Robert Kitchens' house and Timothy Kitchens went inside for about 30 minutes. Moncier and Mitchell waited in the van. No discussion was had at this time about their plans. Kitchens exited the house with a white styrofoam box and placed it in the back of the van.

Kitchens then said they were going to the "country." They started the van and drove toward Frisco, Texas. She asked why they were driving up and down the road, and both said they were trying to find a lab. According to Mitchell, this was the first time any explanation, as to their plans, was given. Moncier said they were going to go "hit two dykes." Dianna was asked by the prosecutor if she recalled the exact words that either of them said to her when they first explained to her what they were going to do. She answered:

A. DeWayne told me, "I can tell you now that it's too late."

Q. He said—

A. "I can tell you not it's too late." He said, "I can tell you now because it's too late for you to get out." He said, "We're going to go hit two dykes."

Shortly after this conversation, appellant stopped the van, both men got into the back, opened the styrofoam box, took a broken down rifle from it and started putting it together. This was the first time Mitchell had seen a rifle.

After assembling the rifle, the three drove to a trailer park and parked within a few feet of a trailer house. All three got out of the van and approached the trailer. Mitchell testified that she stepped up on a wooden step and knocked on the door. The two men were standing with their backs to the trailer, one on each side of the door, where they could not be seen by the occupants of the trailer. The following testimony was developed:

Q. [Prosecutor, Ms. Springer] Okay. As you stood on the bottom step of those steps in front of that door, that trailer, with DeWayne Moncier on one side of you with a rifle in his hand and Timothy Kitchens on the other side of you, both of them standing with their backs against the trailer and one of them with—excuse me, both of them with bandanas across their faces, what was going through your mind?

A. [Mitchell] What am I doing here?

Q. Were you frightened?

A. Very.

Q. Did you want to be where you were right then?

A. No.

Q. Why didn't you leave?

A. It was too late for me to back out.

Q. Well, what do you mean by that?

A. I was already there.

Q. What do you think would have happened if you just turned around and left, walked away?

MR. CHAPMAN: Objection, calls for speculation.

THE COURT: Overruled.

Q. (By Ms. Springer) What do you think would have happened if you had walked away from that trailer right then?

A. I have no idea.

Q. Were you frightened of any particular circumstance in particular? I'm sorry, I'm repeating myself. Were you frightened of anything in particular?

A. I was scared of them because I didn't know what they would have done.

TEX.PENAL CODE ANN. art. 7.02(a)(1)(2) (Vernon 1974) provides that a person is criminally responsible for an offense committed by another, if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

From the evidence recited, as well as the other evidence adduced at trial, a strict construction of the statute would require a determination that Dianna Mitchell was an accomplice witness as a matter of law. However, the cases have consistently held that where there is any doubt as to whether a witness is an accomplice, even

though the evidence preponderates in favor of a conclusion that the witness is an accomplice as a matter of law, the proper procedure is to submit the matter to a jury. *Harris v. State,* 645 S.W.2d 447, 454 (Tex.Crim.App.1983); *Brown v. State,* 640 S.W.2d 275, 279 (Tex.Crim.App.1982); *Carrillo v. State,* 591 S.W.2d 876, 882 (Tex.Crim.App.1979); *Arney v. State,* 580 S.W.2d 836, 839 (Tex.Crim.App.1979); *Colunga v. State,* 527 S.W.2d 285, 287 (Tex.Crim.App.1975); *Van Buskirk v. State,* 492 S.W.2d 279, 281 (Tex.Crim.App.1973); *Crew v. State,* 675 S.W.2d 787, 788 (Tex.App.—Dallas 1984, pet. ref'd); *Hill v. State,* 666 S.W.2d 130, 133 (Tex.App.—Houston [14th Dist.] 1983, no pet.); *Shanks v. State,* 643 S.W.2d 150, 153 (Tex.App.—El Paso 1982, pet. granted).

■ This long line of cases reflect the proper procedure to be followed. In this case there was doubt in the mind of the trial judge, which was borne out by his submission of the matter to the jury, and that doubt was set to rest by the finding of the jury that the witness, Dianna Mitchell, was not in fact an accomplice witness. For this court to hold that the witness was an accomplice witness as a matter of law would violate the jury system, by substituting our judgment for the judgment of the jury. We did not view the witness, nor observe her demeanor on the witness stand. We hold that the evidence is inconclusive that Dianna Mitchell was an accomplice as a matter of law. Appellant's ground of error is overruled.

Appellant argues, in his second ground of error, that the trial court erred by submitting a special issue at the punishment stage of the trial, over his timely objection, as to whether a deadly weapon was used or exhibited during the commission of the offense. He contends that this submission violated his right to due process because the indictment contained no allegation of a deadly weapon. We disagree.

Appellant's precise contention under this ground of error is that a finding that appellant used or exhibited a deadly weapon during the commission of the offense subjects him to a greater punishment because, under TEX.CODE CRIM.PROC.ANN. art. 42.12, sec. 15(b) (Vernon 1979), his period of incarceration is extended for a greater length of time before he becomes eligible for parole. Thus, he contends, he is entitled to notice in the charging instrument that the State intends to seek an affirmative finding that a deadly weapon was used or exhibited in the commission of the offense.

We are not unmindful of the recent opinion of the Texas Court of Criminal Appeals in *Polk v. State,* 693 S.W.2d 391 (1985). In the *Polk* case the court sat en banc. Judge Miller wrote for the majority, Judge Clinton concurred with written opinion, Judge Teague concurred in part and dissented in part, with written opinion, and Judge Onion concurred without written opinion.

Judge Clinton, in his concurring opinion, expresses the following philosophy:

... a threshold problem presented by the factual situation in this cause and every other one in which the charging instrument does not expressly allege that a weapon said to have been used or exhibited is a "deadly weapon." When denial of grant of probation by a trial court and deprivation of freedom and liberty by extended confinement in a penitentiary hang on that very question, due process and due course of law require that the trier of fact at any stage of trial on criminal action not be authorized to make an adverse finding against an accused unless and until the issue has been tendered by the pleading of the State.

693 S.W.2d at 397.

Judge Teague considers the majority opinion to be advisory, yet believes that the question of notice should be answered. He expresses the opinion that the Texas Constitution guarantees a defendant the right to demand the nature and cause of action against him, and while recognizing that the finding of the use or exhibition of a deadly weapon during the commission of a crime does not enhance the punishment, it nevertheless extends the time when the defendant will become eligible for parole. He

agrees with Judge Clinton that notice must be given in the charging instrument. 693 S.W.2d at 399–400.

Judge Miller's majority opinion recognizes Judge Clinton's concurring opinion in footnote 4, 693 S.W.2d at 396:

> The concurring opinion by Clinton, J., would require "notice" in the form of a formal pleading in the indictment before entry of such a finding would be proper. Such a requirement may well *add* an element to whatever offense was alleged, a reasonable doubt about which would lead to a not guilty verdict. *Cf. Tew v. State,* 551 S.W.2d 375 (Tex.Crim.App. 1977); *Rounsavall v. State,* 480 S.W.2d 696 (Tex.Crim.App.1972); *Romay v. State,* 442 S.W.2d 399 (Tex.Crim.App. 1969); and *Wheat v. State,* 442 S.W.2d 363 (Tex.Crim.App.1969). This is a valid impediment to such a requirement. Moreover, the corpus of what we are dealing with is *eligibility for parole,* not what the penalty range or sentence will be. Though not raised in this case, the "notice" requirement of the due process clause of both the 5th and 14th Amendments of the U.S. Constitution and the due course of law clause in Art. 1, § 19 of the Texas Constitution must be examined in that light when properly before us.

Although the Texas Court of Criminal Appeals has not addressed the precise question presented in this appeal, the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit have.

In *Greenholtz v. Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the United States Supreme Court considered the question of a person's due process rights in discretionary parole release. The Court stated that in order to obtain a protectable right under the due process clause

> ... a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Greenholtz,* 442 U.S. at 8, 99 S.Ct. at 2103–2104 (*quoting Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

The Court went on to hold:

> There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: '[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.' *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976).

*Greenholtz,* 442 U.S. at 8, 99 S.Ct. at 2104. *See Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981).

The Court recognized that a State's parole statute could create a liberty interest protected by due process guarantees, 442 U.S. at 13, 99 S.Ct. at 2106, but held that the *possibility* of parole provides no more than a mere hope, and that such hope is not protected by due process. 442 U.S. at 12, 99 S.Ct. at 2105.

In *Rummel v. Estelle,* 445 U.S. 263, 294–95, 100 S.Ct. 1133, 1149, 63 L.Ed. 382 (1980), the Supreme Court stated that parole was "simply an act of executive grace." The Court noted that while a State "may create legitimate expectations that are entitled to procedural protection under the Due Process Clause of the Fourteenth Amendment," the Texas parole statute *does not create such a cognizable interest.* 445 U.S. at 295, 100 S.Ct. at 1149.

The United States Court of Appeals for the Fifth Circuit, in *Williams v. Briscoe,* 641 F.2d 274 (5th Cir.1981), analyzed the Texas parole statute, comparing it with the Nebraska statute in question in *Greenholtz.* The court found that the Texas parole statute could not reasonably be taken to encourage the expectancy of the right

to parole. 641 F.2d at 277. The court concluded:

> We hold that the Texas Adult Probation, Parole and Mandatory Supervision Law, Tex.Code Crim.Proc. art. 42.12 (Vernon 1979), does not create that protectible expectancy of release recognized by the Supreme Court in *Greenholtz.*

*Id. See Johnson v. Wells,* 566 F.2d 1016, 1018 (5th Cir.1978); *Craft v. Texas Board of Pardons and Paroles,* 550 F.2d 1054, 1056 (5th Cir.1977).

■ Upon the authority of these cases, we conclude that eligibility for parole under TEX.CODE CRIM.PROC.ANN. art. 42.12 (Vernon 1979) is not a protectible interest under the due process clause. The statute does not enlarge the punishment for the crime or affect the range of punishment that the jury may assess. The State need not allege "use or exhibition of a deadly weapon" in the indictment before an affirmative finding can be made by the trier of fact under TEX.CODE CRIM. PROC.ANN. art. 42.12 (Vernon 1979). Appellant's ground of error is overruled.

■ In his final ground of error, appellant contends there is no evidence to support the submission of the issue of use or exhibition of a deadly weapon. We disagree. Having concluded that Mitchell was not an accomplice as a matter of law, her testimony is sufficient evidence to support the submission of the issue. Mitchell testified that appellant was carrying a rifle when they approached the trailer house. She also testified that she later noticed Kitchens had a pistol and used it to tap on the window of the trailer. The fact that Kitchens and Moncier never had an opportunity to brandish, threaten to use, or actually discharge the weapons does not mean that they did not "use" the weapons. *United States v. Moore,* 580 F.2d 360, 362 (9th Cir.) *cert. denied,* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed. 430 (1978); *See United States v. Grant,* 545 F.2d 1309, 1312–13 (2d Cir.1976) *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977); *United States v. Mason,* 658 F.2d 1263, 1270–71 (9th Cir.1981). There was evidence that

Kitchens and Moncier set out to rob a methamphetamine lab and armed themselves with the weapons. These weapons "increased the likelihood of success; without them [they] probably would not have sallied forth." *Moore,* 580 F.2d at 362.

We conclude there was sufficient evidence to support the submission of the issue to the jury. The ground of error is overruled. The judgment is affirmed.

GUITTARD, C.J., and DEVANY, GUILLOT, MALONEY, McCRAW, VANCE and ZIMMERMANN, JJ., join in the majority opinion.

AKIN, J., concurs with majority without opinion.

HOWELL, J., dissents with opinion.

WHITHAM, J., concurs in Justice HOWELL's dissent with opinion.

McCLUNG, J., joins in Justice WHITHAM's concurring opinion to Justice HOWELL's dissenting opinion.

WHITHAM, Justice, concurring.

I concur in Justice Howell's dissenting opinion that Dianna Mitchell was an accomplice witness as a matter of law. Therefore, I would sustain appellant's first ground of error and reverse and remand on that basis alone. Consequently, I do not join or concur in the majority's disposition of appellant's second and third grounds of error, and I do not join or concur in that part of Justice Howell's dissent addressing appellant's third ground of error.

HOWELL, Justice, dissenting.

I dissent. The majority refuses to hold that Dianna Mitchell was an accomplice as a matter of law despite clear and convincing evidence of the fact. Furthermore, the State failed to produce evidence that a deadly weapon was used or exhibited. The judgment of the trial court should be reversed. At minimum we should modify the judgment to delete the affirmative finding on the use of a deadly weapon.

Mitchell herself provides the testimony that establishes her culpability. She stated that she knew of the plans to "hit two dykes." She knew that this meant robbery. The disproportionate reward of $500 merely for knocking on a door strongly suggests an understanding that illegal activities were being pursued. Mitchell witnessed the appellant and Kitchens arm themselves before approaching complainant's door at 3:30 in the morning and she proceeded to carry out her part of the bargain by knocking and attempting to persuade complainant to open the door while her armed companions remained out of sight. She even falsely employed the name "Susan" when asked who she was. When the police arrived, she hid first under a mobile home and then in the van. She continued to assist the fleeing men by implicating a fictitious "John" in the crime.

Beyond doubt, Mitchell was an actor; she was more than a mere observer. Her actions in knocking on the door while her companions waited to force their way in made her into an active participant in the episode for which appellant was tried, the only legitimate question raised by the majority opinion is whether or not she was coerced into assisting the would be burglars. Suffice to say, she never directly testified that she was coerced. Although only nineteen, she was worldly enough to agree to voluntarily climb into a van with two men at the hour of midnight in return for the promise of five hundred dollars just to knock on a door. The circumstances under which she signed aboard this voyage bespeak nefarious conduct. Bear in mind that according to her own admission, the crew made several stops. Between midnight and three a.m., she never asked to be released from her bargain. She never asked to be taken home. She gave no testimony of a direct threat. In the three hours of meandering about in the van, she voluntarily engaged in a sex act with Kitchens. Although she testified that she was frightened while knocking on the door of the mobile home, she admitted on cross examination that she was not afraid of her companions; her fright is referable only to the circumstances—circumstances under which anyone with good sense would feel the pangs of fright.

The amount of money promised, the activities and conversations prior to arrival, the fact that this activity occurred in the middle of the night, her flight, and her initial false statements to the police, taken together, reject the notion that she was acting under duress, subject to coercion of a nature sufficient to destroy her free will. Had she been a co-indictee, her testimony would have been entirely adequate to sustain a conviction. She was, as a matter of law, an accomplice.

The majority is doubtless correct when it states that the question whether a witness is an accomplice is ordinarily reserved for the trier of fact. However, I do not share the majority's concern for the right of trial by jury. History clearly teaches that jury trial was forged as a safeguard for individual liberty against the excesses of government. We do not limit that right when we hold that the evidence will not sustain a conviction. Where the evidence clearly establishes that a witness is an accomplice as a matter of law, we are under the duty to so declare. *Allen v. State*, 461 S.W.2d 622, 624 (Tex.Crim.App.1970).

It is difficult to imagine a more clearly established case of criminal responsibility than the one before us. The quoted testimony, shows nothing more than her apprehension concerning the consequences, should she refuse to carry out her part of the offense. The record reveals no threat and no violence by either of these men to force Mitchell to begin or continue her criminal conduct. Certainly a conspirator on the threshold of the offense is likely to harbor fears that backing out of the crime would bring reprisals from his confederates. Such apprehension hardly provides a defense to criminal responsibility.

The author is aware of the cases holding that the question whether a witness is an accomplice should be submitted to the jury even if the evidence prepondates in favor of a witness being an accomplice. In each

case, however, the alleged accomplice or other witness gave exculpatory testimony. The cases merely recognize that the jury is free to believe a witness's plea of innocence. But here, the testimony of Dianna Mitchell herself shows her to be a willing participant in a criminal endeavor. The evidence being clear, the trial court was obligated to instruct that she was an accomplice as a matter of law.

In the following instances, reversal is required if the trial court fails to instruct the jury that the witness is an accomplice as a matter of law is reversible: (1) if the witness is, in fact, an accomplice and there is no evidence to corroborate his testimony, or (2) without the testimony there is insufficient evidence to support a conviction or (3) because it is the sole corroboration of the testimony of another accomplice witness. *Gonzales v. State*, 441 S.W.2d 539, 541–542 (Tex.Crim.App.1969); *Morales v. State*, 663 S.W.2d 150, 151 (Tex.App.—Corpus Christi 1983, no pet.).

Without Mitchell's testimony, the case against appellant collapses. The state can only point to his arrest some four hours after the burglary in the general area in a bedraggled condition. The resulting situation meets the second prong of the *Gonzales* test. Without Mitchell, there is insufficient evidence to support a conviction and this court should order an acquittal.

Neither can this writer find evidence to support the finding that appellant used or exhibited a deadly weapon. This phase of the case turns upon the proper definition of the term "used." The federal cases relied on by the majority involve the construction of a federal criminal statute. They are not controlling. Neither are they persuasive.

Mitchell testified that appellant and Kitchens had a rifle and pistol when they exited the van. Police found a gun at the rear of the complainant's mobile home. However, complainant never saw a weapon, was not threatened by one and was unaware that appellant possessed a gun. In fact, the complainant was not aware of appellant's presence. She testified that she only saw one man outside the trailer. No evidence indicated that any guns were taken into the mobile home.

The record is barren of any suggestion that the gun or the rifle were "exhibited." The inquiry narrows to the question whether either of them was, "used" in the commission of the offense within the sense contemplated by the statute. Black's Law Dictionary defines "to use" as "to make use of, to convert to one's service, to avail one's self of, to employ." Webster's Ninth New Collegiate Dictionary states that "use" employed as a verb means "to put into action or service, avail oneself of, employ." Undoubtedly these definitions reflect the common understanding of the term.

Here, the weapons formed *no operative part of the offense.* No evidence indicates that guns were fired or deployed as a threat. The offense would have occurred in the same way had appellant been totally unarmed. Certainly, it is unnecessary that a weapon be fired for it to have been "used." *May v. State*, 660 S.W.2d 888, 889 (Tex.App.—Austin 1983, pet. granted). However, the author believes that the complainant or some other innocent person at the scene of the crime must be made aware of the presence of the weapon and placed in apprehension before it can be declared, within the statutory concept, that the weapon has been used. An aggravated robbery conviction has been upheld where a gun was concealed in a black bag, but even though the gun never left the bag, the witness was able to identify it as a pistol. *Riddick v. State*, 624 S.W.2d 709, 710–711. (Tex.App.—Houston [14th Dist.] 1981, no pet.). This knowledge coupled with a threat supplied the aggravating circumstances. *Id.* at 711.

This Court upheld an aggravated assault conviction where a man armed with a shotgun accosted a restaurant employee in a freezer. He neither pointed the gun at the complainant nor threatened to use it, but kept it within the complainant's sight. "It was the presence of the gun in appellant's hand that installed fear in the complainant and made her feel threatened with bodily

injury." Again, the weapon played a visible role in the offense. *Gaston v. State*, 672 S.W.2d 819, 821 (Tex.App.—Dallas 1983, no pet.).

In another case, an indictment for aggravated robbery alleged that a deadly weapon had been used and exhibited. The evidence showed that the defendant's confederate had held another employee at gunpoint while the defendant robbed the complainant. The complainant knew that the confederate was armed but was unaware that he was holding her co-worker. The court refused to find the necessary elements of aggravation in the robbery because the complainant did not know of the weapon's use by the co-defendant and the defendant's threat to the complainant was not a threat to use deadly force. *Taylor v. State*, 637 S.W.2d 929, 931–932 (Tex.Crim. App.1982).

Possession of weapons did not affirmatively aid the appellant in committing the offense. The firearms were not fired, aimed or employed as instruments of intimidation. The majority takes the position that a gun has been used wherever the defendant commits an offense while armed, but if this was the intent of the Legislature, it could have so stated. *See People v. Chambers*, 7 Cal.3d 666, 102 Cal.Rptr. 776, 498 P.2d 1024 (1972). Criminal statutes are not to be expanded by construction. I would hold that the statute requires *active use*—the gun must constitute some operative part of the offense.

This interpretation is consonant with the language of the entire statute. The statute applies not only to guns but to all "deadly weapons", with specific reference to the definition contained in TEX.PENAL CODE § 1.07(a)(11). The statutory definition of "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." If we extend the "no-parole" statute to cases where the defendant merely possessed an arguably deadly weapon, we reach a situation of circuity: The article was used because it was in defendant's possession at the time of the offense and it is deadly because it was used. The Legislature could not have intended to go so far.

The author further notes Mitchell's testimony that Kitchens tapped on the complainant's home with the pistol. However, there is no suggestion that the occupant was made aware that the tapping was being done with a gun. Neither is there testimony that actors were attempting to make complainant aware of his possession of the gun nor place the complainant under apprehension of its use. The gun was merely being employed as a tool, a hammer. The guns, in their capacity as firearms, played no *operative part in the offense.* Possession at the time of the crime, standing alone, does not meet the requirement as the "no-parole" statute.

The affirmative finding should be deleted from the judgment.