546 A.2d 465

**James Othel WYNN**

v.

**STATE of Maryland.**

**No. 29, Sept. Term, 1987.**

Court of Appeals of Maryland.

Sept. 1, 1988.

534

Greta C. Van Susteren (Milliken, Van Susteren & Canan, on the brief) Washington, D.C., for appellant.

Ronald M. Levitan, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief) Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

COLE, Judge.

In this case we must decide whether the trial court erred in convicting James Wynn of the use of a handgun in the commission of a crime of violence. The answer to this question depends upon whether bare possession of a handgun in the commission of a crime of violence is the equivalent of use of a handgun in the commission of a crime of violence under Art. 27, § 36B(d).

The facts giving rise to this issue are straightforward. On January 12, 1985, Wynn was observed by a team of undercover police officers on surveillance in a neighborhood recently subjected to a series of burglaries. Wynn was acting suspiciously and two of the officers decided to question him. As the officers approached, Wynn turned and walked away. One of the officers subsequently identified himself and demanded that Wynn halt. Wynn then turned to face the officer while simultaneously reaching under his coat. The officer, believing that Wynn had drawn a gun, shot Wynn as he attempted to flee the scene. At the point where Wynn was apprehended, and along the route of his attempted escape, the police recovered two handguns, a holster and ammunition belt, jewelry, and assorted burglar tools. The jewelry and one of the handguns were later found to have been stolen from the home of Mr. and Mrs. Hans Prauser, located in the same vicinity where Wynn was arrested.

Wynn was charged with housebreaking, theft, use of a handgun in the commission of a crime of violence (housebreaking), assault with intent to murder, assault with intent to prevent apprehension, use of a handgun in the commission of a felony (assault with intent to prevent apprehension), simple assault, and two counts of carrying a handgun. Wynn was tried by a jury in the Circuit Court for Montgomery County (Cave, J.) and convicted of housebreaking, theft, use of a handgun in the commission of a crime of violence

(housebreaking), assault, and carrying a handgun (two counts). His sentence for use of the handgun was consecutive to his sentences for the other charges.

Wynn challenged his convictions in an appeal to the Court of Special Appeals but that court affirmed the lower court. *Wynn v. State,* 69 Md.App. 536, 518 A.2d 1072 (1987). We subsequently granted Wynn's petition for a writ of certiorari.

Before outlining the parties' contentions, it is necessary to refer to the statutory provisions underlying this dispute. Wynn was tried and convicted under Maryland Code (1957, 1982 Repl.Vol., 1986 Cum.Supp.) Art. 27, § 36B(d), for the use of a handgun in the commission of a crime of violence. Section 36B constitutes a portion of the Handgun Control Act of 1972, codified at Art. 27, §§ 36B–36F. This comprehensive scheme begins with a preamble at § 36B(a) which provides:

(a) **Declaration of policy.**—The General Assembly of Maryland hereby finds and declares that:

(i) There has, in recent years, been an alarming increase in the number of violent crimes perpetrated in Maryland, and a high percentage of those crimes involve the use of handguns;

(ii) The result has been a substantial increase in the number of persons killed or injured which is traceable, in large part, to the carrying of handguns on the streets and public ways by persons inclined to use them in criminal activity;

(iii) The laws currently in force have not been effective in curbing the more frequent use of handguns in perpetrating crime; and

(iv) Further regulations on the wearing, carrying, and transporting of handguns are necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens.

Section 36B(b) and (d) provide in pertinent part:

(b) **Unlawful wearing, carrying, or transporting of handguns; penalties.**—Any person who shall wear,

carry, or transport any handgun, whether concealed or open, upon or about his person, and any person who shall wear, carry or knowingly transport any handgun, whether concealed or open, in any vehicle traveling upon the public roads, highways, waterways, or airways or upon roads or parking lots generally used by the public in this State shall be guilty of a misdemeanor; and it shall be a rebuttable presumption that the person is knowingly transporting the handgun....

(d) **Unlawful use of handgun or antique firearm in commission of crime; penalties.**—Any person who shall use a handgun or an antique firearm capable of being concealed on the person in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a separate misdemeanor and on conviction thereof shall, in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor:

(1) For a first offense, be sentenced to the Maryland Division of Correction for a term of not less than 5 nor more than 20 years, and it is mandatory upon the court to impose no less than the minimum sentence of 5 years.

(2) For a second offense or subsequent offense, be sentenced to the Maryland Division of Correction for a term of not less than 5 nor more than 20 years, and it is mandatory upon the court to impose no less than a minimum consecutive sentence of 5 years which shall be served consecutively and not concurrently to any other sentence imposed by virtue of the commission of said felony or misdemeanor.

Art. 27, § 441(e) defines "crime of violence" as follows:

(e) The term "crime of violence" means abduction; arson; burglary, including commonlaw and all statutory and storehouse forms of burglary offenses; escape; housebreaking; kidnapping; manslaughter, excepting involuntary manslaughter; mayhem; murder; rape; robbery; robbery with a deadly weapon; sexual offense in the first degree; and sodomy; or an attempt to commit

any of the aforesaid offenses; or assault with intent to commit any other offense punishable by imprisonment for more than one year.

The statute does not define "use."

Wynn does not dispute that housebreaking is a statutory crime of violence. Further, at oral argument, Wynn's counsel conceded that a reasonable finder of fact could conclude that Wynn possessed a handgun while breaking into the Prauser home.[1] It is likewise apparent that the State does not dispute that Wynn did not display, fire, or threaten to fire the gun while in the Prauser home. This concession is based on the simple fact that no one was present while Wynn was in the Prauser home. The parties do dispute, however, one critical issue.

Wynn contends that the State must prove that he utilized the gun, beyond mere possession, in order to convict him of use of a handgun in the commission of a crime of violence in violation of Art. 27, § 36B(d). Wynn maintains that the language used by the legislature in § 36B(d) is clear and unambiguous in this regard. He also argues that if this Court finds the language to be ambiguous, legislative intent dictates that his interpretation of the statute be adopted. Finally, Wynn argues that his interpretation is consistent with the construction given similar statutes in other states.

The State also argues that the word "use" in § 36B(d) is unambiguous but concludes that because Wynn had "recourse to or enjoyment of" the gun while in the Prauser home, he is guilty of use of the handgun in the commission of a crime of violence. However, in the event this Court concludes that the word "use" is ambiguous, the State directs the Court's attention to the preamble of § 36B, which according to the State clearly supports a construction consistent with its interpretation, *i.e.*, that the legislature intended that § 36B(d) apply to the possession of a handgun

---

1. Wynn conceded during oral argument at the Court of Special Appeals that he carried the gun during the housebreaking. *See Wynn v. State,* 69 Md.App. 536, 544 n. 1, 518 A.2d 1072, 1076 n. 1 (1987).

during the commission of a crime of violence in recognition of the heightened potential for death or serious harm when handguns are present during the perpetration of violent crimes.

▮ Our task in this case is to determine whether the legislature intended that a conviction for use of a handgun in the commission of a crime of violence arises under the facts presented. We emphasized in *Kaczorowski v. City of Baltimore*, 309 Md. 505, 525 A.2d 628 (1987), that the search for legislative intent is most accurately characterized as an effort to discern some general purpose, aim, or policy of the statute. *Id.* at 513, 525 A.2d at 632. In this regard, we begin the process by examining the words of the statute in accord with their plain meaning. Obviously, "what the legislature has written in an effort to achieve a goal is a natural ingredient of analysis to determine that goal." *Id.* However, when a statute is plainly susceptible of more than one meaning and thus contains an ambiguity the court may consider the consequences resulting from one meaning rather than another and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense. *Id.*

▮ We also pointed out that the plain-meaning rule is not a complete, all-sufficient rule for ascertaining a legislative intention because the meaning of the plainest language is controlled by the context in which it appears. *Id.* at 514, 525 A.2d at 632. In determining the context of statutory language, we must consider any persuasive evidence

including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

*Id.* at 515, 525 A.2d at 632–33.

▮ Wynn argues that § 36B(d), a penal statute, should be strictly construed. *Briggs v. State*, 289 Md. 23, 32, 421

A.2d 1369, 1374 (1980); *State v. Fabritz,* 276 Md. 416, 422, 348 A.2d 275, 279, *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1975). While we agree that this canon of construction is correct as a general proposition, we also agree with the comments of the Supreme Court in *United States v. Brown,* 333 U.S. 18, 25–26, 68 S.Ct. 376, 380, 92 L.Ed. 442 (1948):

> The canon in favor of strict construction is not an inexorable command to override common sense and evident statutory purpose. It does not require magnified emphasis upon a single ambiguous word in order to give it a meaning contradictory to the fair import of the whole remaining language ... [n]or does it demand that a statute be given the "narrowest meaning"; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers. (Citations omitted).

*Accord State v. One 1984 Toyota Truck,* 311 Md. 171, 180–81, 533 A.2d 659, 663 (1987); *Kaczorowski,* 309 Md. at 513–16, 525 A.2d at 632–33 (1987); *State v. Intercontinental, Ltd.,* 302 Md. 132, 137, 486 A.2d 174, 176 (1985).

Further, it has been said that "where the meaning of applicable penal statutes is in doubt, the courts must weigh the interests of the individual against the interests of the public. Where public or social interest in penal legislation is especially great, the policy of giving penal laws a very strict construction may be relaxed." 3 Sutherland, *Statutory Construction* § 59.05, at 33 (4th ed. 1986) *citing Allen v. State,* 18 Md.App. 459, 307 A.2d 493 (1973).

Although the parties proffer differing interpretations of the word "use" as employed in § 36B(d), pursuant to *Kaczorowski* we must examine § 36B as a whole and attempt to harmonize the language in question in that context. *Jones v. State,* 311 Md. 398, 535 A.2d 471 (1988); *Scott v. State,* 297 Md. 235, 465 A.2d 1126 (1983). In this regard, the preamble to the section must not be overlooked for it purports to be a declaration of the policy of the legislature. *McAlear v. McAlear,* 298 Md. 320, 469 A.2d 1256 (1984)

(preamble to a statute may be considered in determining legislative intent). As a declaration of policy, the four subsections of this preamble reflect the legislature's concerns surrounding the proliferation of death and serious injury when handguns are employed in crimes of violence. To combat this evil, and to protect the rights and liberties of the citizens of Maryland, the legislature strengthened the laws currently in force with further proscriptions on the wearing, carrying, transporting, and use of handguns.

In examining the preamble we note that the legislature specifically distinguished between the *wearing, carrying, and transporting* of handguns and the *use* of handguns in criminal activity. In particular, in § 36B(a)(ii) the legislature emphasized that the increase in the number of persons killed or injured by handguns was directly related to the carrying of handguns by persons inclined to use them in criminal activity. This comment clearly indicates that the legislature considered the use of a handgun to be something more than mere illegal possession of a handgun and that the legislature contemplated *use* of a handgun in an active as opposed to a passive manner. Death and injury do not arise from a handgun which remains holstered.

An examination of the substantive provisions adopted in § 36B bolsters the proposition that the legislature did not contemplate that use of a handgun would be equivalent to bare possession of a handgun. In § 36B(b) the legislature prohibited the unlawful *wearing, carrying, and transporting* of handguns and provided for enhanced penalties based on the particular defendant's criminal history. A first offender will receive a fine of not less than $250.00 nor more than $2500.00 or imprisonment for a term of not less than 30 days nor more than 3 years or both. A second offense is punishable by a mandatory 1 year sentence with a maximum term of 10 years. A third offense is punishable by a mandatory 3 year sentence with a maximum term of 10 years. If it is demonstrated that the defendant was wearing, carrying, or transporting the handgun with the deliberate purpose of injuring or killing another person,

§ 36B(b)(iv) mandates that the trial court impose a sentence of imprisonment of not less than 5 years. Like § 36B(a)(ii), this latter provision indicates that "possession" of a handgun may be a prelude to its "use." *Wynn,* 69 Md.App. at 551, 518 A.2d at 1079 (Bell, R.M., J., dissenting).

On the other hand, in recognition of the heightened risk of harm associated with the *use* of a handgun in the commission of a crime of violence, the legislature directed that first offenders would face a mandatory 5 year prison term with a maximum exposure of 20 years. § 36B(d)(1). A second or subsequent offender faces a mandatory minimum term of 5 years to be served consecutive to any other sentence imposed. § 36B(d)(2).[2]

The separate treatment of the carrying and wearing of a handgun in one instance, and use of a handgun in another, convinces us that if the legislature had intended for use of a handgun to encompass the conduct in this case it would have expressly so provided. As we see it, the legislature would have drafted § 36B(d) so as to specifically proscribe the "carrying, wearing, transporting, or use" of a handgun in the commission of a crime of violence. In light of the lack of such express language, we reject the State's broad construction. We agree with Wynn that in the context of the entire statute, the term "use" connotes something more than bare possession of a handgun in the commission of a crime of violence.

Our construction of this provision is consistent with the line of cases which teach that penal statutes should be construed so as to extend punishment only to cases plainly within the language used. *See Jones v. State,* 304 Md. 216, 498 A.2d 622 (1985); *Briggs v. State,* 289 Md. 23, 421 A.2d 1369 (1980); *State v. Canova,* 278 Md. 483, 365 A.2d 988 (1976). Furthermore, our construction is consistent with that taken by the courts in other jurisdictions under similar

---

**2.** We made clear in *State ex rel. Sonner v. Shearin,* 272 Md. 502, 325 A.2d 573 (1974), that a trial court is without power to suspend a sentence imposed under Section 36B(d).

circumstances. *See Jordan v. State,* 274 Ark. 572, 626 S.W.2d 947 (1982) (to convict a defendant of employing a firearm in the course of a felony there must be a finding of something more than bare possession); *People v. Chambers,* 7 Cal.3d 666, 102 Cal.Rptr. 776, 498 P.2d 1024 (1972) (to convict for use of a firearm there must be conduct which produces a fear of harm or force by means of display of a firearm); *State v. Chouinard,* 93 N.M. 634, 603 P.2d 744 (1979). *But cf. Moncier v. State,* 704 S.W.2d 451 (Tex.App. 1986).

We particularly agree with the analysis of the Supreme Court of California in *Chambers, supra.* In that case, the court held that the defendant could be convicted of both armed robbery and use of a firearm in the commission of a felony. In defining the conduct which constitutes use of a firearm within the meaning of the California statute in question, the court stated:

> By employing the term "uses" instead of "while armed" the Legislature requires something more than merely being armed.... Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies. "Uses" means ... "to carry out a purpose or action by means of," to "make instrumental to an end or process," and to "apply to advantage." The obvious legislative intent to deter the use of firearms in the commission of the specified felonies requires that "uses" be broadly construed.

*Chambers,* 102 Cal.Rptr. at 779–80, 498 P.2d at 1027–28. (Citations omitted). Since the defendant had pointed a gun at the victim and demanded money, it was clear that the defendant had used the gun in the commission of a felony. *See also People v. Donnell,* 52 Cal.App.3d 762, 125 Cal. Rptr. 310 (1975).

To conclude, when reading § 36B with reference to the preamble, it is clear that the legislature sought to

protect the public from an unjustified risk of harm by deterring the unlawful possession and use of handguns under all circumstances. *See Dillon v. State,* 277 Md. 571, 584, 357 A.2d 360, 368 (1976) ("The dominant purpose as disclosed from the language in all of Art. 27, § 36B is to stop the alarming rise in the use of handguns in the commission of crimes of violence."); *York v. State,* 56 Md.App. 222, 229, 467 A.2d 552, 555–56 (1983), *cert. denied,* 299 Md. 137, 472 A.2d 1000 (1984) ("[T]he paramount purpose of the General Assembly in enacting § 36B was to reduce the especially high potential for death or serious injury that arises when a handgun, as distinguished from some other weapon, is used in a crime of violence."); *see also State v. Crawford,* 308 Md. 683, 693, 521 A.2d 1193, 1198 (1987); *Wright v. State,* 24 Md.App. 309, 317, 330 A.2d 482, 487, *cert. denied,* 274 Md. 733 (1975). It is equally clear that the legislature did not equate carrying of a handgun with use of a handgun. Since there was no evidence that Wynn in any way actively used a gun in the housebreaking, he is not guilty of use of a handgun in the commission of a crime of violence; however, this conclusion does not affect the validity of the other crimes for which he was convicted and sentenced.[3]

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMING THE CIRCUIT COURT FOR MONTGOMERY COUNTY AS TO THE CONVICTION AND SENTENCE FOR THE USE OF A HANDGUN IN THE COMMISSION OF A CRIME OF VIOLENCE REVERSED; IN ALL OTHER RESPECTS THE JUDGMENTS OF THE COURT OF SPECIAL APPEALS ARE AFFIRMED.

---

**3.** Defendant was convicted and sentenced to prison as follows: housebreaking—10 years; use of a handgun in the commission of a crime of violence—15 years (10 years suspended and the remaining 5 years consecutive to the sentence for housebreaking); 4 years for assault, 2 years for carrying of a handgun, and 8 years for theft, all concurrent. An additional sentence for carrying a handgun merged with the charge of using a handgun in the commission of a crime of violence. The net effect of our decision today is to reduce Wynn's sentence to 10 years.

CASE REMANDED TO THE COURT OF SPECIAL AP-
PEALS TO REMAND TO THE CIRCUIT COURT FOR
MONTGOMERY COUNTY FOR ENTRY OF JUDGMENT
CONSISTENT WITH THIS OPINION.  COSTS TO BE
DIVIDED EQUALLY.

MURPHY, C.J., and BLACKWELL, J., dissent.

BLACKWELL, Judge, dissenting.

The majority holds that a defendant who commits a
housebreaking while carrying a loaded handgun is not
guilty under Article 27, § 36B(d) of "use" of a handgun in
the commission of a crime of violence.  I disagree and
respectfully dissent.

While the defendant admits he carried a fully loaded and
operational .38 caliber colt revolver during the house-
breaking, the majority notes that the defendant did not
actively employ this gun in the sense of force or intimi-
dation; therefore, he did not "use" the gun as the legisla-
ture contemplated in § 36B(d).  Instead, the majority holds
that such action constitutes the lesser crime of § 36B(b),
which makes it illegal to "wear, carry, or transport any
handgun", unrelated to any other criminal activity or use.

This conclusion is incorrect in light of the mandate of
36B(d), which penalizes "any person who shall use a hand-
gun ... capable of being concealed on the person in the
commission of any felony or any crime of violence as
defined in § 441."  There is no ambiguity in the word
"use."  If a defendant knowingly carries a handgun during
the commission of a felony or a violent crime, it is unimpor-
tant whether he holds it in his hand, points it in someone's
face, or carries it in his pocket, belt or holster.  The
defendant is effectively using the handgun to accomplish
his purpose, namely a felony or crime of violence itemized in
§ 441.  By contrast, if a defendant unlawfully possesses a
handgun without committing a felony or violent crime, the
defendant is guilty of the lesser crime under § 36B(b).  The
majority's holding blunts the statute's purpose by allowing
defendants who knowingly carry handguns during the com-

mission of a crime to escape the stricter punishment of § 36B(d) simply based on the chance that they are not confronted.

Federal law concurs with this interpretation of the word "use." In affirming the conviction of a defendant for use of a firearm to commit a felony, the Ninth Circuit definitively held that:

[t]he fact that [the defendant] never had an opportunity to brandish or discharge his gun does not mean that he did not 'use' it. [The defendant] attempted to rob a bank and possession of a loaded gun was an integral part of the attempt. [The defendant] 'used' his gun, much as he used the gloves and ski mask. These items increased the likelihood of success; without them he probably would not have sallied forth.

*United States v. Moore*, 580 F.2d 360, 362 (9th Cir.1978) (interpreting 18 U.S.C. § 924(c)(1) (1976)), *cert. denied sub nom. Moore v. United States*, 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978). *See also United States v. Matra*, 841 F.2d 837, 842–43 (8th Cir.1988); *United States v. Mason*, 658 F.2d 1263, 1270–71 (9th Cir.1981).

The trier of fact in the instant case correctly concluded that the defendant used the handgun to accomplish his purpose. I would affirm the conviction.

MURPHY, C.J., has authorized me to say that he joins in this dissenting opinion.